**Ronald PLASKETT, Plaintiff,**

v.

**BECHTEL INTERNATIONAL, INC., Defendant.**

**No. CIV.2002–0149.**

District Court, Virgin Islands, D. St. Croix.

Jan. 27, 2003.

---

Lee J. Rohn, Law Offices of Lee J. Rohn, Christiansted, VI, for Plaintiff.

Francis J. D'Eramo, Nichols, Newman, Logan & D'Eramo, P.C., Christiansted, VI, for Defendant.

## MEMORANDUM OPINION

FINCH, Chief Judge.

THIS MATTER comes before the Court on Defendant Bechtel International Inc.'s

(hereinafter "Bechtel") Motion to Compel Arbitration. Plaintiff Ronald Plaskett opposes such motion.

## I. Background

Bechtel hired Plaintiff Ronald Plaskett to work as a warehouse aide in the Hovensa refinery in St. Croix, Virgin Islands on June 26, 2000. Complaint, ¶ 4. On August 21, 2000, Plaskett entered into an Hourly Employment Agreement (hereinafter "Agreement") with Bechtel. Mot. to Compel, Ex. A. The Agreement addresses many aspects of the employment relationship, including compensation, overtime, insurance, vacation, sick pay, increases and promotions, and discipline. It also contains four paragraphs regarding arbitration. Agreement, ¶¶ 16–20.

Plaskett alleges the following facts as the basis for this suit: Plaskett was promoted to warehouse supervisor in February 2002. Complaint, ¶ 5. According to Plaskett, his supervisor demanded that he unfairly reprimand and retaliate against predominantly black employees at the Bechtel warehouse. *Id.*, ¶¶ 6–10. Plaskett complained about such directions. *Id.*, ¶ 8. He ultimately refused to follow his supervisor's instruction to give an unwarranted reprimand. *Id.*, ¶ 11. Shortly thereafter, Plaskett was terminated due to a pretextual reduction in force. *Id.*, ¶ 12. Plaskett claims that Bechtel paid him less and gave him fewer benefits than white employees from the continental United States. *Id.*, ¶ 13.

## II. The Court's Role

A. *The Court Determines Whether The Parties Formed an Agreement to Arbitrate*

■ Under section 2 of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, the court must determine whether the parties entered into a valid arbitration agreement. *See Great Western Mortgage Corp. v. Pea-*

*cock,* 110 F.3d 222, 228 (3d Cir.1997). "In conducting this inquiry the district court decides only whether there was an agreement to arbitrate, and if so, whether the agreement is valid." *Id.*

■ For example, in general, consideration is required to form a contract. Restatement (Second) of Contracts § 17. Therefore, the question of whether there is adequate consideration is for the Court. *See Blair v. Scott Specialty Gases,* 283 F.3d 595, 603 (3d Cir.2002).

■ "When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced." *Id.* Plaskett argues that he is bound to arbitrate any disputes that he has with Bechtel concerning his employment, but that Bechtel is not equally bound, and therefore, the Agreement lacks consideration. Plaskett reaches this conclusion through his interpretation of paragraph 16 of the Agreement which provides:

> Any controversy or claim arising out of or relating in any way to this Agreement, to the breach of this Agreement, and/or to Employee's employment with Employer, or to the suspension or termination of Employee's employment with Employer ... shall be resolved by arbitration and not in a court or before an administrative agency.... Employee and the Company agree that Employee's sole remedy for any controversy or claim arising out of or in any way relating to (1) this Agreement; (2) to the breach of this Agreement; and/or (3) to Employee's employment with Employer or to the suspension or termination of Employee's employment with Employer shall be in accordance with the terms of this Agreement.

Plaskett asks the Court to read the last sentence of paragraph 16 in isolation. Read in this manner, the sentence implies

that only the employee is bound to arbitrate. The rules of contract interpretation require the Court to construe the writing as a whole. Restatement (Second) of Contracts § 202(2). Reading paragraph 16 as a whole, the Court finds that the first sentence binds both parties to arbitrate their controversies and claims concerning the employment relationship and that the last sentence merely emphasizes that the employee has no other recourse but arbitration. This interpretation, which gives an effective meaning to all the terms, is preferred. *Id.*, § 203(a). The Court finds that both parties provided consideration in that they both agreed to be bound by arbitration and that there is, therefore, mutuality of obligation. *Cf. Blair*, 283 F.3d at 603 (holding that a contract need not have mutuality of obligation as long as it is supported by consideration).

Plaskett claims that the consideration is illusory because Bechtel has retained the right to unilaterally modify the Agreement. *See* Restatement (Second) of Contracts § 77 (indicating that an illusory promise is not consideration). However, Plaskett has failed to identify any term in the Agreement that provides Bechtel with the right to modify the Agreement unilaterally. On the contrary, the parties can only amend the Agreement via "a written document signed by both Employee and the Company." Agreement, ¶ 23.

Thus, the Court finds that the parties entered into an Agreement that includes arbitration provisions. The arbitration provisions provide consideration for the Agreement, in that both parties agreed to be bound by arbitration. Even if the Court ultimately concludes that the parties' agreement to arbitrate is unenforceable, the arbitration provisions still constitute consideration for the Agreement. Restatement (Second) of Contracts § 78 ("[A] rule of law [that] renders a promise

... unenforceable does not prevent it from being consideration").

B. *The Court Decides Whether the Arbitration Provisions are Unconscionable.*

■ Although the FAA manifests a "liberal federal policy favoring arbitration agreements." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (quotation omitted), arbitration provisions may be attacked under "such grounds as exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2. Attacks must relate specifically to an arbitration provision and not to the validity of an agreement incorporating arbitration provisions. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

■ The Court applies general contract principles of territorial law in determining whether an arbitration agreement is enforceable. *See Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686–87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). In the Virgin Islands, the Restatement (Second) of Contracts expresses the applicable principles of contract law. *See* 1 V.I.C. § 4.

■ A term of an arbitration provision that is unconscionable is unenforceable. *See* Restatement (Second) of Contracts § 208. Inequality in bargaining power is a factor that the Court considers in determining whether an arbitration provision or a term of such provision is unconscionable. *See* Restatement (Second) of Contracts § 208, cmt. d. "Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer v. Inter-*

*state/Johnson Lane Corp.,* 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

 According to the Restatement (Second) of Contracts, even gross inequality of bargaining power does not automatically render an arbitration provision unconscionable. "[G]ross inequality of bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion, or may show that the weaker party had no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms." Restatement (Second) of Contracts § 208, cmt. d; *see also Worldwide Underwriters Ins. Co. v. Brady,* 973 F.2d 192, 196 (3d Cir.1992) ("Unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions.").

 The Court's role is to determine whether an arbitration provision or a term of such provision is unconscionable in light of all the material facts. *See id.,* § 208, cmt. f. A Court may refuse to enforce the arbitration provision or may enforce the arbitration provision without the unconscionable term. *See id.,* § 208.

 A finding that an arbitration provision is unenforceable because it is unconscionable does not violate and is not preempted by the FAA. The Supreme Court has specifically mentioned unconscionability as a generally applicable contract defense that may be raised without contravening section 2 of the FAA. *Doctor's Associates, Inc.,* 517 U.S. at 687, 116 S.Ct. 1652.

## III. Whether the Terms of the Arbitration Provisions Are Unconscionable

### A. *Elimination of Attorney's Fees is Unconscionable in that It Unreasonably Favors Bechtel by Preventing Plaskett from Vindicating His Statutory Rights.*

#### 1. Attorney's Fees in Title VII Cases

 For a claim under a federal statute, such as Title VII, to be appropriate for arbitration, the plaintiff must be able to vindicate his statutory cause of action in the arbitral forum. *See Gilmer,* 500 U.S. at 26. Under Title VII, attorney's fees should ordinarily be awarded to a prevailing plaintiff. 42 U.S.C. § 2000e–5(k); *see Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 416–18, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). A plaintiff may not be forced "to surrender the statutorily-mandated rights and benefits that Congress intended them to possess." *Graham Oil Co. v. ARCO Products Co., a Div. of Atlantic Richfield Co.,* 43 F.3d 1244, 1247 (9th Cir.1994). Courts have refused to enforce arbitration provisions requiring each party to bear their own attorney's fees. *See, e.g., Perez v. Globe Airport Sec. Services, Inc.,* 253 F.3d 1280, 1286 (11th Cir.2001); *Gambardella v. Pentec, Inc.,* 218 F.Supp.2d 237, 245–247 (D.Conn.2002) (collecting district court cases).

A term of an arbitration provision of the Agreement entered into by Plaskett deprives him of this remedy available under Title VII in that it mandates that each party pay its own attorney's fees regardless of the outcome of the arbitration. Agreement, ¶ 19. The term regarding attorney's fees unreasonably favors Bechtel in that it preemptively denies Plaskett his remedies authorized by Title VII. Therefore, it is unconscionable.

2. Attorney's Fees Available under Virgin Islands' Law

■ Section 541 of Title 5 of the Virgin Islands Code provides for the award of costs and attorney's fees to the prevailing party. Thus, if Plaskett had not signed the Agreement he would have been eligible to be awarded costs and attorney's fees. Similarly, if Bechtel had not entered into the Agreement, it would have been eligible to be awarded costs and attorney's fees. Because the provision requiring each party to bear its own costs and attorney's fees does not favor either party with regard to Plaskett's claims for violation of Virgin Islands statutes and the common law, the Court does not find the provision unconscionable on this basis. Whether the arbitrator may award attorney fees and costs pursuant to 5 V.I.C. § 541, notwithstanding the waiver of such remedy in the Agreement is a matter for the arbitrator to decide. *See Great Western Mortgage Corp.*, 110 F.3d at 231–32.

B. *Requiring Plaskett to Notify Bechtel within 30 Days of any Claim or Waive his Rights is Unconscionable.*

■ Similarly if the Court were asked only to rule upon whether Plaskett has waived the applicable statute of limitations for his various claims by agreeing to notify Bechtel of his claims within 30 days in paragraph 19 of the Agreement, it would be constrained to follow *Great Western Mortgage Corp.* and find that the question is one for the arbitrator. *See id.* However, Plaskett makes the additional argument that the provision is unconscionable in that he is in a weak bargaining position and the 30–day term imposed upon him unreasonably favors Bechtel.

Plaskett as a warehouse aide employed by Bechtel in St. Croix, Virgin Islands is in a far weaker bargaining position than Bechtel, a contractor at the Hovensa refinery. Therefore, any term of an arbitration provision that unreasonably favors Bechtel is unconscionable. *See Seus v. John Nuveen & Co., Inc.,* 146 F.3d 175, 184 (3d Cir.1998) (even if employment arbitration agreement were contract of adhesion, it must also be oppressive or unreasonably favorable to employer to be unenforceable).

■ "In the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations provided that the shorter period itself shall be a reasonable period." *Order of United Commercial Travelers v. Wolfe,* 331 U.S. 586, 608, 67 S.Ct. 1355, 91 L.Ed. 1687 (1947). The Court finds the requirement that Plaskett notify Bechtel of any claim within thirty days of the event forming the basis of the claim with the further qualification that such limitation be strictly enforced to be unreasonable. If this term were not included in an arbitration provision, Plaskett would have considerably longer to bring his various claims. *See,e.g.,* 5 V.I.C. § 31(3) (establishing six-year statute of limitations for breach of contract claims).

Moreover, Plaskett obtains absolutely no benefit from this provision. It unreasonably favors Bechtel. In addition, the direction that the thirty day limitation be strictly enforced could be interpreted by an arbitrator as depriving Plaskett of the benefit of the continuing violation doctrine. *See Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 894–895 (9th Cir.2002) (finding that agreement that imposed strict one year statute of limitations on arbitrating claims would deprive plaintiff of benefit of continuing violation doctrine and was unenforceable). Because there is unequal bargaining power between Plaskett and

Bechtel and the thirty day notice requirement is unreasonable and unreasonably favors Bechtel, the Court finds the thirty day notice requirement to be unconscionable and, therefore, unenforceable. *See Lelouis v. Western Directory Co.,* 230 F.Supp.2d 1214, 1221–1222 (D.Or.2001) (finding that one-year limitation period coupled with uneven bargaining positions rendered such time limitation unconscionable). *But see Soltani v. Western & Southern Life Ins. Co.,* 258 F.3d 1038, 1043 (9th Cir.2001) (stating that, with respect to non-statutory claims "the weight of California case law strongly indicates that six-month limitation provision is not substantively unconscionable.").

Bechtel argues that by incorporating the phrase "unless a different time for presentation of the claim is provided for by the National Rules for the Resolution of Employment Disputes of the American Arbitration Association [ (hereinafter 'AAA Rules') ]," Bechtel has not unreasonably favored itself. According to Bechtel, under AAA Rule 4(b), notification of statutory claims is timely so long as it falls within the applicable statute of limitations.

Bechtel misreads AAA Rule 4(b). Unlike the Agreement, AAA Rule 4(b) does not specify a time within which an employee must notify an employer of his or her claim. It is specifically directed to the manner for initiation of arbitration. According to Rule 4(b), an employee may initiate arbitration of any dispute involving statutory rights by filing an action with the American Arbitration Association within the statute of limitations. Although under the AAA Rules, the employee may initiate arbitration of a statutory claim within the statutory time frame, the arbitrator would only be able to afford the employee a

remedy if the employee had provided his or her employer with notice of the claim within the thirty days specified by the Agreement. Thus, notwithstanding the AAA Rule regarding initiating arbitration, Plaskett is still bound by the Agreement to notify Bechtel of any claim within the thirty day limit, which, as stated above, is unconscionable. Moreover, even if AAA Rule 4(b) does allow Plaskett to file his statutory claims within the statutory time frame, it does not provide him with similar relief for filing his non-statutory claims, which still slants the Agreement in Bechtel's favor. *See Lelouis,* 230 F.Supp.2d at 1221 (finding a one-year limitations period imposed by an arbitration agreement to be unconscionable in view of otherwise applicable statute of limitations for statutory and non-statutory claims).

■■■ Even if Plaskett notified Bechtel of his claims within the thirty day-period, the provision is still unconscionable. "[U]nconscionability is determined on the basis of the circumstances at the time of contract formation, and whether the agreement was reasonable then. Whether, in hindsight, the outcome in this case would be different is not controlling." *Lelouis,* 230 F.Supp.2d at 1221–1222.

C. *The Incorporated AAA Rules Regarding Confidentiality Favor Defendants.*

■■■ Under the AAA Rules, incorporated into the Agreement by reference,[1] the award, which must be in writing, is publicly available. AAA Rule 34(b), (c). But the names of the parties are not publicly available unless a party expressly permits its name to be made public in the award. AAA Rule 34(b).

---

1. The Agreement provides:
"Arbitration shall take place ... in accordance with the Rules governing arbitration set forth in the National Rules for the Reso-

lution of Employment disputes of the American Arbitration Association."
Agreement, ¶ 19.

These rules are facially neutral. However, the restriction on the publication of the parties' identities disproportionately favors Bechtel. In *Luna v. Household Finance Corp. III*, 236 F.Supp.2d 1166, 1180–81 (W.D.Wash.2002), the court ruled that a facially neutral confidentiality provision, which kept the entire award confidential, contributed to a finding of substantive unconscionability. The court explained:

> The advantages repeat participants possess over "one time" participants in arbitration proceedings are widely recognized in legal literature and by federal courts. The *Cole* [ *v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1476 (D.C.Cir. 1997) ] Court recognized that repeat arbitration participants gain advantages due to superior knowledge regarding arbitrators, that "a lack of public disclosure may systematically favor companies over individuals," and that "[t]he unavailability of arbitral decisions also may prevent potential plaintiffs from locating the information necessary to build a case of intentional misconduct or to establish a pattern or practice of discrimination by particular companies." *Cole*, 105 F.3d at 1477.... [B]y keeping all awards confidential, any advantages that inure to Defendants as repeat participants are effectively concealed, thereby preventing the scrutiny critical to mitigating those advantages.

*Id.* at 1180 (citations and quotations omitted).

Here, unlike the provision in *Luna*, the entire award is not kept confidential. However, the ability of a party to unilaterally prevent the inclusion of its name in the award favors the repeat participant and makes it difficult for a potential plaintiff to build a case of intentional misconduct or to establish a pattern or practice of discrimination by a particular company. *See Cole*, 105 F.3d at 1476–77. Thus, the provision regarding the confidentiality of the parties' names, although facially neutral, favors Bechtel. Similarly, AAA Rule 18 making the arbitration itself confidential and AAA Rule 17 allowing the arbitrator to hold closed hearings also favor Bechtel and unduly burden Plaskett. The Court holds that given the inequality in bargaining power, AAA Rules 17, 18, and 34, to the extent they provide for confidentiality, are unconscionable.

D. *The Prohibition of Pursuing Resolution of a Discrimination Claim Before an Administrative Agency is Not Unconscionable.*

 Paragraph 16 of the Agreement provides in relevant part that "[a]ny controversy or claim ... shall be resolved by arbitration and not ... before an administrative agency." Plaskett claims that his waiver of his rights to obtain a resolution of his discrimination claims before administrative agencies is unconscionable. According to Plaskett, absent such waiver, he would have the rights to obtain a resolution of his discrimination claims before the Equal Employment Opportunity Commission (EEOC) and the Virgin Islands Department of Labor.

The Court finds that Plaskett does not have the right to obtain a resolution of his discrimination claims before the EEOC, and therefore, has not waived any federal statutory right. The Court reads the relevant clause of paragraph 16 as meaning that neither party may seek a judgment by an administrative agency. When an employee files a charge with the EEOC and the EEOC "determines that there is reasonable cause to believe that the charge is true," the EEOC's first step is "to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e–5(b). If the EEOC is unable to secure a conciliation agreement, the EEOC's only recourse is to file a civil

action. 42 U.S.C. § 2000e–5(f)(1). When the EEOC does commence a civil action, it does so in its own name, not that of the employee who filed a charge with it. *Id.* Thus, the EEOC does not have the authority to enter any judgment resolving any controversy or claim between the parties. Plaskett cannot waive a right that he has never had.

The Department of Labor, on the other hand, not only must "endeavor to eliminate . . . discrimination complaint of by conference, conciliation and persuasion," but also must enter an order providing remedies to the employee if it is not able to resolve the matter informally and finds, after a hearing, that the employer has engaged in discrimination. 24 VI.C. §§ 452, 455. Plaskett claims that his waiver is unconscionable in that it prevents him from vindicating a statutory right because it conflicts with the Department of Labor's right to obtain victim-specific relief as the EEOC is allowed to do according to the Supreme Court's holding in *EEOC v. Waffle House, Inc.*, 534 U.S. at 296, 122 S.Ct. 754.

Unlike the EEOC, however, the Department of Labor does not have the right to bring an independent action against the employer. Therefore, the Court need not attempt to reconcile the recent teachings of the Supreme Court with Plaskett's waiver of his right to resolve his claims before the Department of Labor. The Court finds that since if it is not unconscionable for Plaskett to submit to resolution of his dispute in an arbitral, rather than judicial, forum, even given his uneven bargaining power, *see Gilmer,* 500 U.S. at 33, 111 S.Ct. 1647, then it is not unconscionable for Plaskett to waive the administrative forum provided by the Department of Labor, in favor of arbitral forum.

## IV. The Appropriateness of Severance

### A. *Bechtel Cannot Make the Arbitration Provision Conscionable by Altering It After Execution.*

■ Bechtel seeks to waive many of the terms of the arbitration provisions that Plaskett argues are unconscionable. This offer does not aid Bechtel "since the fairness of a contract must be viewed as of the time the contract was formed." *Lelouis,* 230 F.Supp.2d at 1224 –1225.

Furthermore, Plaskett has refused to accept Bechtel's offer to modify the Agreement. Therefore, the Agreement remains as originally signed, unmodified. "As a matter of elementary contract law, [a party] cannot unilaterally modify the existing agreement." *Popovich v. McDonald's Corp.,* 189 F.Supp.2d 772, 779 (N.D.Ill. 2002); *see also Perez,* 253 F.3d at 1284 n. 2 (refusing to consider employer's unilateral offer to use less expensive private arbitration since such offer was rejected by employee, leaving agreement as originally signed); *Flyer Printing Company, Inc. v. Hill,* 805 So.2d 829, 833 (Fla.App. 2 Dist. 2001) (refusing to remake parties' contract when employee rejected employer's offer to pay all costs of arbitration, contrary to agreement's language); *cf.* Restatement (Second) of Contracts § 287(2) ("If a party, knowing of an alteration that discharges his duty, .. manifests a willingness to remain subject to the original contract or to forgive the alteration, the original contract is revived"). "Principles of justice and fair play . . . lead to the conclusion that one party cannot alter *post litem motam* terms of an agreement so that a case is dismissed." *In re Managed Care Litigation,* 132 F.Supp.2d 989, 1001 (S.D.Fla. 2000).

As the California Supreme Court explained:

[W]hether an employer is willing, now that the employment relationship has ended, to allow the arbitration provision to be mutually applicable, or to encompass the full range of remedies, does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy. Such a willingness can be seen, at most, as an offer to modify the contract; an offer that was never accepted. No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it.

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 99 Cal. Rptr.2d 745, 6 P.3d 669, 697 (2000) (quotation omitted). Moreover, Bechtel expressly agreed that any amendment to the Agreement would be by written agreement of the parties. Agreement. § 23. Thus, Bechtel cannot remedy the arbitration provisions by waiving its rights under the Agreement.

B. *The Unconscionable Terms Permeate the Arbitration Provision and Cannot be Severed.*

 The arbitration provisions of the Agreement contain a number of objectionable terms: the attorney's fees clause; the 30–day notice clause; and the AAA Rules regarding confidentiality incorporated into the arbitration provisions by reference. These terms unreasonably favor Bechtel which has far greater bargaining power than Plaskett. The inclusion of "multiple defects ... strongly suggests a deliberate decision to use the employer's superior bargaining position to obtain an unfair advantage." *Lelouis*, 230 F.Supp.2d at 1225.

 The arbitration provisions are permeated with these unconscionable terms, making severance inappropriate. Substantially rewriting the arbitration provisions, absent a mistake in formation, is not a proper court function. *Ting v. AT & T*, 182 F.Supp.2d 902, 935 (N.D.Cal.2002);

*Lelouis*, 230 F.Supp.2d at 1225. When the central purpose of an arbitration provision is tainted with illegality, then the provision as a whole cannot be enforced. *Id.* Thus, the Court refuses to enforce the arbitration provisions. *See,. e.g., Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 788 (9th Cir.2002) (finding that arbitration agreement so permeated with unconscionable clauses that the Court could not remove the unconscionable taint by severance); *Graham Oil Co.*, 43 F.3d at 1247 (concluding that three objectionable clauses were not severable from the arbitration agreement as a whole); *Acorn v. Household Intern., Inc.*, 211 F.Supp.2d 1160, 1174 (N.D.Cal.2002) (finding severance inappropriate because agreement's purpose was tainted with illegality). *But see Spinetti v. Service Corp. Int'l*, 240 F.Supp.2d 350 (W.D.Pa.2001) (severing provisions regarding payment of arbitration costs and attorney's fees without disturbing primary intent of parties to arbitrate dispute).

 However, the arbitration provisions are severable from the Agreement as a whole and are distinct from such Agreement. The Agreement has a valid legal purpose of governing the relationship between Bechtel and Plaskett. Inclusion of the arbitration provisions is not essential to the Agreement, since in its absence the parties have access to the judicial forum for resolving their disputes. Furthermore, the Agreement contains a severability provision. Agreement, ¶ 22. Therefore, the Court finds that except for the arbitration provisions, which are unconscionable, the Agreement is enforceable. *See Ting*, 182 F.Supp.2d at 936.

## V. Conclusion

For the foregoing reasons, the Court will not enforce the arbitration provisions of the Agreement. The remainder of the

346

Agreement is enforceable. Accordingly, the Court must deny Bechtel's Motion to Compel Arbitration.

### ORDER

THIS MATTER comes before the Court on Defendant Bechtel International Inc.'s Motion to Compel Arbitration. Plaintiff Ronald Plaskett opposes such motion. For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Hourly Employee Agreement entered into between Plaskett and Bechtel International Inc. is enforceable with the exception of its arbitration provisions, paragraphs 16 through 20. Accordingly, it is further **ORDERED** that the Motion to Compel Arbitration is DENIED.