ROBERT ADDIE, JORGE PEREZ, and JASON TAYLOR, Plaintiffs

v.

CHRISTIAN KJAER, HELLE BUNDGAARD, STEEN BUNDGAARD, JOHN KUND FURST, KIM FURST, NINA FURST, PREMIER TITLE COMPANY, INC. f/k/a FIRST AMERICAN TITLE COMPANY INC., and KEVIN F. D'AMOUR, Defendants

ADDIE v. KJAER

Civ. No. 2004-135

District Court of the Virgin Islands

Division of St. Thomas and St. John

May 10, 2005

GREGORY H. HODGES, ESQ., St. Thomas, U.S.V.I., *For the plaintiffs.*

CAROL G. HURST, ESQ., St. Thomas, U.S.V.I., *For defendants Christian Kjaer, Helle Bundgaard, Steen Bundgaard, John Kund Fürst, Kim Fürst, and Nina Fürst.*

JOHN K. DEMA, ESQ., St. Croix, U.S.V.I., *For defendant Premier Title Company, Inc. f/k/a First American Title Company, Inc.*

MARIA TANKENSON HODGE, ESQ., St. Thomas, U.S.V.I., *For defendant Kevin D'Amour.*

GOMEZ, *Judge*

## MEMORANDUM

(May 10, 2005)

Defendant Premier Title Company, Inc. ["Premier Title"] has filed a motion requesting that the Court stay proceedings in this matter and enter an order compelling the parties to arbitrate their dispute. For the reasons set forth below, the motion will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This matter arises from a failed attempt by the plaintiffs to purchase land from certain defendants named in this action. According to the allegations presented in the plaintiffs' complaint, the plaintiffs entered into two contracts of sale with defendants Christian Kjaer, Helle Bundgaard, Steen Bundgaard, John Kund Fürst, Kim Fürst, and Nina Fürst [collectively, "sellers"]. The first contract provided that the plaintiffs would purchase from the sellers a parcel of land in Estate Nazareth for $2,500,000 ["Nazareth contract of sale"]. The second contract provided that the plaintiffs would purchase Great St. James island from the sellers for $21,000,000 ["Great St. James contract of sale"]. To effectuate the purchases, both contracts provided that the plaintiffs would deposit certain monies in escrow with defendant Premier Title Company.[1]

---

[1] At the time the contracts were executed, the escrow company did business under the name First American Title Company, thus the First American name appears on the

599

The plaintiffs allege that on the same day the contracts of sale and escrow agreement were executed, they delivered $1,000,000 to Premier Title as an escrow deposit pursuant to the terms of the escrow agreement. (Compl. at 3.) Subsequently, the plaintiffs delivered a second escrow deposit to Premier Title in the amount of $500,000. The plaintiffs allege that Premier Title improperly released the initial $1,000,000 escrow deposit to an account held by defendant Kevin D'Amour.[2] (Compl. at 6.) Thereafter, the plaintiffs allege that Premier Title improperly released the second escrow deposit, in the amount of $500,000. (*Id.*) The plaintiffs further allege that these releases were improper in that Premier Title had not received written authorization from the plaintiffs to release the deposits, and because the sellers had not delivered clear and marketable title to the properties at issue.

After making unsuccessful demands on all the defendants for return of the $1,500,000 in escrow deposits, the plaintiffs filed this action. Thereafter, Premier Title filed the motion presently before the Court, arguing that under the terms of the escrow agreement this litigation must be stayed and the parties ordered to submit to arbitration.

## II. ANALYSIS

In support of its motion to stay and compel arbitration, Premier Title points to the arbitration provision contained at paragraph 2.4 of the escrow agreement. (*Id.* at 3.) Premier Title also argues that "federal policy favors arbitration and thus a court [must] resolve[ ] doubts about the scope of an arbitration agreement in favor of arbitration." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983)).

Notwithstanding this deference, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986); *see also Kaplan v. First Options of Chicago, Inc.*, 19 F.3d

---

contracts at issue. First American has since changed its name to Premier Title, which is the name the Court employs in this opinion.

[2] According to his filings in this matter, D'Amour was the seller's legal counsel for this transaction and is also a principal of Premier Title. (D'Amour's Opp'n. to Mot. for Prelim. Inj. at 2.)

1503, 1512 (3d Cir. 1994) ("arbitration is fundamentally a creature of contract ... arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration"). Thus, the Court must determine if the parties objectively manifested an intent to arbitrate the issues that are at the center of this litigation. *See Sanford Inv. Co., Inc. v. Ahlstrom Mach. Holdings, Inc.,* 198 F.3d 415, 421 (3d Cir. 1999) ("A court's purpose in examining a contract is to interpret the intent of the contracting parties, as they objectively manifest it."). To make that determination, the Court must examine the contracts of sale and the escrow agreement, all of which Premier Title admits are "part and parcel of the same contractual undertaking."[3] (Mot. to Stay at 4.)

Premier Title argues that the escrow agreement requires that this dispute be resolved in arbitration, whereas the plaintiffs argue that language in the contracts of sale govern and demand the litigation remain in this Court. Consistent with the parties' positions, the contracts of sale and the escrow agreement provide vastly different options regarding the appropriate forum for dispute resolution. Paragraph 14 of both contracts of sale contain nearly identical terms requiring that any dispute regarding the transaction be "litigated." Paragraph 14 of the Great St. James contract of sale provides:

> Any dispute, disagreement or legal action by any party with respect to the Real Property or the transaction contemplated in this Agreement, shall be litigated, exclusively in the United States District Court of the Virgin Islands (St. Thomas and St. John Division) or in the event that Federal Jurisdiction is not applicable, in the Territorial Court of the U.S. Virgin Islands. In furtherance hereof, the parties agree to submit to the jurisdiction of the Courts of the U.S. Virgin Islands for the purposes of this Agreement and any disputes or controversies arising therefrom. In addition, any dispute, disagreement or legal action as to the disbursement of the Deposit shall be litigated exclusively in the U.S. Virgin Islands. In the event either party is required to enforce the provisions of this

---

[3] In interpreting contracts, this Court is guided by the rules of law set forth in the Restatement (Second) of Contracts, absent any local rules to the contrary. *See* V.I. CODE ANN., tit. 1, § 4. Section 202(2) of the Restatement states that "[a] writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together." RESTATEMENT (SECOND) OF CONTRACTS § 202(2).

Agreement, the prevailing party shall be entitled to receive from the other party all costs and expenses, including, without limitation, reasonable attorney's fees incurred, at trial and on appeal, in connection with such enforcement.

(Comp., Ex. A at ¶ 14 (emphasis added).) Paragraph 14 of the Nazareth contract of sale contains the same wording, with the minor exception that the second-to-last sentence quoted above begins "Provided, however," rather than "In addition."[4] (Compl., Ex. B at ¶ 14.)

In contrast, the escrow agreement contains an arbitration provision at paragraph 2.4, stating that "[a]ny controversy involving a claim by Buyer or Seller under this Agreement shall be finally settled by arbitration ..."[5] (Compl. Ex. C at ¶ 2.4; Mot. to Stay, Ex. A at ¶ 2.4.)

▮ Fortunately, the parties contemplated the existence of potentially conflicting terms between the documents, and explicitly elected at paragraph 4.3 of the escrow agreement to have the terms of the contracts of sale prevail over any contradictory terms in the escrow agreement in the event of a conflict such as the one presented by the arbitration and litigation clauses. Paragraph 4.3 of the escrow agreement states: "In the event of a conflict between the terms of this Agreement and the Contracts of Sale, the terms of the Contracts of Sale shall govern." (Compl. Ex. C at P 4.3; Mot. to Stay, Ex. A at P 4.3.) Given the plain language contained in the relevant documents, particularly paragraph 4.3

---

[4]   Paragraph 14 contained in the Nazareth contract of sale and paragraph 14 contained in the Great St. James contract of sale are collectively referred to herein as "the litigation clauses."

[5]   The full text of the escrow agreement's arbitration provision states as follows:

2.4 <u>Arbitration</u>. Any controversy involving a claim by Buyer or Seller under this Agreement shall be finally settled by arbitration in the Virgin Islands (St. Thomas and St. John), in accordance with the then-current Commercial Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. Such arbitration shall be conducted by three arbitrators chosen by mutual agreement of the Seller and Buyer. Failing such agreement, the arbitration shall be conducted in accordance with the foregoing rules. There shall be limited discovery prior to the arbitration hearing, subject to the discretion of the arbitrators, as follows: (a) exchange of witnesses lists and copies of documentary evidence and documents related to or arising out of the issues to be arbitrated, (b) depositions of all party witnesses, and (c) such other depositions as may be allowed by the arbitrators upon a showing of good cause. The cost and expense (including counsel fee) of the prevailing party or parties with respect to any such arbitration shall be borne by the other party or parties.

of the escrow agreement, it is clear to the Court that the parties intended the litigation clauses to override the conflicting arbitration provision in the escrow agreement. *See Williams v. Metzler*, 132 F.3d 937, 947 (3d Cir. 1997) (stating that contract interpretation centers "on the intent embodied in the language that the parties chose to memorialize their agreement").

The only question that remains is whether the litigation contemplated by the parties in the litigation clauses includes arbitration. Premier Title argues that the litigation clauses should be read in a manner that does not foreclose the possibility of arbitration. (Premier April 6, 2005, Mem. at 4-5.) Premier Title also argues that the requirement that disputes be "litigated" should be read to include arbitration. Premier Title's arguments are creative but cannot survive.

■ First, "the rules of contract interpretation require the Court to construe the writing as a whole." *Plaskett. v. Bechtel Intern., Inc.*, 243 F. Supp. 2d 334, 339 (D.V.I. 2003). Significantly, there is no indication that the parties intended the term "litigate" to be read to include arbitration proceedings. Instead, considering the context in which the sentence appears, there is every indication that the parties intended the term "litigate" to retain its customary meaning, *i.e.*, resolution of disputes <u>in a court of law</u>. *See, e.g.*, BLACK'S LAW DICTIONARY 934 (6th ed. 1990) (defining litigation as "contest in a court of law for the purpose of enforcing a right or seeking a remedy").[6]

Second, Premier Title's position is further belied by the definition of the term "arbitration," which specifically excludes "ordinary litigation" in "established tribunals of justice." *See* BLACK'S LAW DICTIONARY 105 (6th ed. 1990) (defining arbitration as "an arrangement for taking and abiding by the judgment of selected persons in some disputed matter, instead of carrying it to established tribunals of justice, and is intended to avoid the formalities, the delay, the expense and vexation of ordinary litigation").

---

[6]     Moreover, the escrow agreement provides evidence that the parties knew how to clearly provide for arbitration when it was their intention to do so. The escrow agreement explicitly employs the term "arbitration," sets forth an elaborate procedure for selection of arbitrators, and refers to the rules of the American Arbitration Association. (Compl. Ex. C at ¶ 4.3; Mot. to Stay, Ex. A at ¶ 4.3.) No comparable provisions for arbitration are present in paragraph 14 of either contract of sale.

In sum, Premier Title invites this Court to accept an overly broad definition of "litigate." The Court must decline that invitation, as the suggested definition is incongruous with an objective reading of the parties' intent and with the customary meaning of the term "litigate." Accordingly, having considered the parties arguments, both written and oral, the Court holds that the intent of the parties, as expressed in the contracts of sale and escrow agreement, is that this dispute be resolved in this Court. As such, Premier Title's motion to stay this matter and compel arbitration will be denied. An appropriate order follows.