

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-19-2003

# Alexander v. Anthony Intl

Precedential or Non-Precedential: Precedential

Docket No. 02-3764P

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Alexander v. Anthony Intl" (2003). *2003 Decisions.* Paper 289.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/289

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed August 19, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-3764

———————

BLAISE ALEXANDER;
GERALD FREEMAN,

*Appellants*

v.

ANTHONY INTERNATIONAL, L.P.

———————

On Appeal from the District Court
of the Virgin Islands
(D.C. Civil No. 97-cv-00058)
District Judge: Hon. Raymond L. Finch, Chief Judge

———————

Argued April 30, 2003

BEFORE: ROTH, MCKEE and COWEN, *Circuit Judges*

(Filed August 19, 2003)

> K. Glenda Cameron, Esq. (Argued)
> Law Office of Lee J. Rohn
> 1101 King Street, Suite 2
> Christiansted, St. Croix
> USVI, 00820
>
> Counsel for Appellants

Linda J. Blair, Esq. (Argued)
Bryant, Barnes & Moss
1134 King Street, 2nd Floor
Christiansted, St. Croix
USVI, 00820

Counsel for Appellee

## OPINION OF THE COURT

COWEN, *Circuit Judge.*

Blaise Alexander and Gerald Freeman appeal from the order of the District Court for the Virgin Islands compelling arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, and dismissing their complaint against Anthony Crane International, L.P. ("Anthony Crane")[1] with prejudice. Plaintiffs asserted several claims under Virgin Islands law arising out of the alleged discriminatory conduct of Anthony Crane, their previous employer. Because of an arbitration agreement in the employment contract, the District Court ruled that such claims must be pursued in the arbitral forum and dismissed plaintiffs' complaint. We, however, conclude that this agreement to arbitrate is unenforceable pursuant to the well-established doctrine of unconscionability. We therefore will reverse.

## I.

Plaintiffs have worked for over twenty years as heavy equipment and certified crane operators at the Hess oil refinery on St. Croix, United States Virgin Islands. Plaintiffs, originally from St. Lucia, attended schools operating under the British system of education. Alexander left school at the age of fourteen, having received the equivalent of a seventh-grade education. Freeman, who also left school at the same age, had no more than the equivalent of a fifth-grade education.

Hess Oil Virgin Islands Corporation has entered

---

1. The caption identifies the defendant as Anthony International, L.P.

arrangements with a series of contractors to provide heavy equipment services. It announced in June 1996 that the equipment contract was awarded to Anthony Crane. Anthony Crane, a Pennsylvania company, has offices throughout the United States and the world.

On August 10, 1996, plaintiffs, along with other prospective employees, attended an orientation meeting conducted by Anthony Crane. The attendees received several documents, including the Hourly Employee Contract. The acceptance of this standard form contract constituted a condition of employment, and plaintiffs had no opportunity to negotiate or otherwise reject its specific terms. Plaintiffs signed the agreement and began working for Anthony Crane. They claimed that they accepted the terms of the contract because they needed the job. Alexander actually had three children in college at the time.

Among its various provisions, the Hourly Employee Contract contains several clauses governing the resolution of disputes. It provides that "[a]ny controversy or claim arising out of or relating in any way to this Contract, to the breach of this Contract, and/or to EMPLOYEE's employment with ANTHONY . . . shall be settled by arbitration and not in a court or before an administrative law judge." App. at 17, 30. Arbitrable matters include all claims "arising out of or relating in any fashion to this Contract, to the breach of this Contract, or to EMPLOYEE'S employment with ANTHONY."[2] App. at 18, 31. The employee

---

2. The Hourly Employee Contract continues:

> Arbitrable matters include, but are not limited to, the following: claims for wrongful or retaliatory discharge or wrongful treatment under Virgin Islands or Federal law, including, but not limited to, the Civil Rights Acts of 1866, 1871, and 1964, Title VII, the Equal Employment Opportunity Act, the Equal Pay Act, the Fair Labor Standards Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act, and Titles 10 and 24 of the Virgin Islands Code; claims for employment discrimination under Virgin Islands law or Federal law; defamation or matters sounding in tort; and the issue of arbitrability of any claim or dispute.

App. at 18.

also waives the right to a trial by jury as to any claim or dispute ruled non-arbitrable.

The arbitration must occur pursuant to the FAA and "the arbitration provisions of the Employment Dispute Resolution Rules of the American Arbitration Association (Rules 11-35 of the January 1993 version, to the extent applicable)." App. at 19, 32. According to the Hourly Employee Contract, the employee must satisfy a thirty-day limitations period in order to pursue a claim against Anthony Crane:

> EMPLOYEE must present EMPLOYEE's claim in written form to the Company within thirty (30) calender days of the event which forms the basis of the claim. For the purposes of this time limitation, the event forming the basis of a claim arising from discharge of EMPLOYEE shall be the date of discharge. In no event may EMPLOYEE bring a claim of any nature against ANTHONY unless the claim is filed as set forth in this paragraph within thirty (30) days of the last day EMPLOYEE was employed by ANTHONY. The written notice submitted by the EMPLOYEE shall describe the event forming the basis of claim, a description of his claim, the relief sought by EMPLOYEE, and an address and telephone number where EMPLOYEE can be reached. Notice must be given to the General Manager by hand delivery or by certified mail, return receipt requested, and must be received by the General Manager on or before the expiration of thirty (30) calender days from the date of the event forming the basis of the claim. If notice is given by hand delivery, EMPLOYEE must retain a receipted copy of the notice. If notice is given by certified mail, EMPLOYEE must retain a copy of the return receipt. In the event that timely notice is not provided to the Company as set forth herein, it is agreed that the EMPLOYEE has waived EMPLOYEE's right to assert the claim, and shall have no further remedy against the Company. It is further agreed that this time limitation is to be strictly enforced by the arbitrator.

App. at 19-20, 32-33. The contract further requires Anthony Crane to submit, within fifteen calender days of its

receipt of the employee's timely notice, a request to the Federal Mediation and Conciliation Service or the American Arbitration Association ("AAA") for a list of five impartial arbitrators in order to commence the selection process.

The Hourly Employee Contract also allocates the costs of arbitration. It provides that the "losing party shall bear the costs of the arbitrator's fees and expenses." App. at 20, 33. Anthony Crane agreed to advance these fees and expenses, but, if it prevails in the proceeding, the employee is bound to provide reimbursement. The contract states that, with the exception of the arbitrator's fees and expenses, "each party shall bear its own costs and expenses, including attorney's fees." App. at 20, 33.

The Hourly Employee Contract delineates the form and extent of any arbitration award in the employee's favor. It authorizes the arbitrator to uphold Anthony Crane's actions or grant relief to the employee. Such relief "shall consist of net pecuniary damages and/or reinstatement." App. at 21, 34. "Net pecuniary damages" is defined as:

> . . . gross wages which EMPLOYEE could have earned with ANTHONY during any period of suspension or from the time period commencing on the date of discharge and terminating on the date of the arbitration award, minus any compensation from other employment earned by EMPLOYEE during such time period, and minus any unemployment compensation received by EMPLOYEE during such time period.

App. at 21, 34. The contract "specifically excluded" incidental or consequential damages from this definition. App. at 21, 34. The arbitrator is also prohibited from substituting his or her judgment for the judgment of Anthony Crane and from altering or amending the form of any disciplinary action if the arbitrator found such action was merited. The Hourly Employee Contract finally contains an invalidity provision, stating that the invalidity of any portion of the contract shall not affect the validity of any other provision and that the parties agree that any remaining provisions "shall remain in full force and effect." App. at 22, 35.

Anthony Crane allegedly engaged in discriminatory conduct after its hiring of plaintiffs. Plaintiffs claimed that it used "white, Statesider employees" to perform the same or similar work at higher pay and benefits. App. at 42. Anthony Crane allegedly discriminated in making promotions, with all foreman and higher positions filled by these "white, Stateside employees." App. at 42. Michael Cain, the operations manager, allegedly informed Anthony Crane workers at a September 1996 meeting that the company would not recognize seniority and "that no 'old men' would be filling" crane operator positions. App. at 43.

On February 17, 1997, Anthony Crane ordered Alexander to take a qualification test. Plaintiffs alleged that Alexander was given no warning or an opportunity to prepare and that only certain older, black employees were required to take this examination. Anthony Crane then terminated Alexander based on his test performance. According to plaintiffs, the company interpreted the test results in a discriminatory fashion. Alexander was fifty-nine years old at the time of his termination.

Anthony Crane informed Freeman on December 26, 1996 that he was being laid off because of a work reduction. Plaintiffs challenged this purported justification, claiming that Anthony Crane retained younger, white employees with less experience and fewer qualifications and hired such employees to perform the same or similar work after Freeman's "layoff." Although Freeman allegedly discovered that Anthony Crane was still hiring crane operators, the company informed him that no work was available.

Plaintiffs filed charges with both the Equal Employment Opportunity Commission and the Virgin Islands Department of Labor. On May 27, 1997, plaintiffs filed a complaint in the District Court. Alleging that Anthony Crane is a citizen of Pennsylvania, plaintiffs premised jurisdiction on diversity of citizenship. The complaint lacked any federal causes of action but contained five counts under Virgin Islands law. Anthony Crane allegedly violated both the Virgin Islands Wrongful Discharge Act and the Virgin Islands Civil Rights Act. The complaint further alleged that Anthony Crane's actions constituted intentional and negligent infliction of emotional distress. Plaintiffs

sought punitive damages in addition to back pay, costs, and attorney's fees.

On December 22, 1997, Anthony Crane moved to stay this action pending arbitration. In an order dated April 6, 1998, the Magistrate Judge determined that, because it is the responsibility of the court and not the arbitrator to ascertain the validity of an arbitration agreement, he must decide whether the agreement at issue here constitutes a contract of adhesion and is unconscionable or contrary to public policy.[3] The Magistrate Judge granted Anthony Crane's motion in a May 6, 1998 order. The Magistrate Judge accepted that the Hourly Employee Contract was a form document and that prospective employees "may have no realistic ability to modify its terms." App. at 128. He, however, still decided to enforce the agreement to arbitrate, rejecting plaintiffs' contention that the agreement is unconscionable or offends public policy.

Expecting any arbitration to take at least seven days, plaintiffs claimed that they informed Anthony Crane of their inability to afford arbitration. Plaintiffs relied on information submitted by the potential arbitrators to demonstrate the amount of fees at issue. One prospective arbitrator indicated that she charged $175.00 per hour or between $800.00 and $1000.00 per day. Another arbitrator said that he is compensated at the rate of $275.00 per hour. A third possible choice stated that he charged $175.00 per hour or $1000.00 per diem. Anthony Crane paid the AAA's arbitration administration fee on April 1, 1998. In a September 14, 1998 letter, Lee J. Rohn, Esq., counsel for plaintiffs, responded to an inquiry from defense counsel concerning the selection process. She indicated that Glenda Cameron, Esq., who was responsible for researching and striking proposed arbitrators, had gone to Washington, D.C. for emergency surgery and would not

---

3. The Magistrate Judge originally ordered a factual hearing on this issue of enforceability. For purposes of its motion for a stay, Anthony Crane stipulated to the truthfulness of plaintiffs' account of the signing of the Hourly Employee Contract and even conceded " 'that the court could find that the employment contract is one of adhesion.' " App. at 127. No evidentiary hearing was ever held.

return for at least two weeks. Rohn stated that she would ask her to make this selection process a priority upon her return. It also appears that Maurice Cusick, Esq., another attorney handling plaintiffs' case, "developed heart problems and was out of the office and the matter did not advance for a period of time." App. at 134. The AAA closed this case in January 1999.

Plaintiffs accordingly filed a notice of status and motion to vacate the order of arbitration on May 7, 2002. Finding that he lacked the authority to decide a motion to compel arbitration, the Magistrate Judge referred this motion to Chief Judge Finch.

In an order dated September 12, 2002, the District Court vacated the stay, compelled arbitration, and dismissed plaintiffs' complaint with prejudice. It concluded in an accompanying memorandum opinion that the Magistrate Judge did not have jurisdiction to decide Anthony Crane's original motion. It therefore considered the Magistrate Judge's order as a report containing proposed findings of fact and recommendations and plaintiffs' motion to vacate as untimely objections to this "report." The District Court reviewed these proposed findings and recommendations for clear error. It ruled that the Magistrate Judge's finding that the agreement to arbitrate is enforceable regardless of Virgin Islands public policy was not clearly erroneous because of the application of the FAA and its preemption of any alleged territorial policy against arbitration in the employment context. The District Court then considered plaintiffs' contention that the arbitration agreement improperly provided for the surrender of several rights under Virgin Islands law. Plaintiffs challenged the thirty-day notice requirement based on territorial statutes of limitations and claimed that the contract also restricted their right to obtain attorney's fees as well as incidental, consequential, and punitive damages. The District Court, however, concluded that the enforceability of such waivers must be decided by the arbitrator. The District Court finally held that the Magistrate Judge did not commit any clear error as to the matter of arbitration expenses because plaintiffs never argued before the Magistrate Judge that they were deterred by the "loser pays" provision from

pursuing arbitration and never provided any evidence to the Magistrate Judge of the actual costs at issue or their inability to pay them. Plaintiffs timely appealed.

## II.

Plaintiffs challenge the manner in which the District Court considered the Magistrate Judge's ruling. Although they agree with the District Court that the Magistrate Judge lacked the authority to grant the stay, they assert that the District Court erred in treating the Magistrate Judge's order as proposed findings of fact and recommendations. According to plaintiffs, the District Court was required to vacate this ruling as a nullity and render a fully de novo determination regarding the validity and enforceability of the agreement to arbitrate. They alternatively assert that the District Court, even if it properly considered the order of the Magistrate Judge as proposed findings and recommendations, failed to subject the Magistrate Judge's legal conclusions to the proper de novo review. Anthony Crane, while defending the decision to treat the order as a recommendation under a clear error standard of review, argues that the Magistrate Judge actually possessed the power to issue this order to stay.

Because we clearly have appellate jurisdiction over the District Court's order dismissing this action, *see, e.g., Blair v. Scott Specialty Gases*, 283 F.3d 595, 598-602 (3d Cir. 2002), we need not resolve these preliminary issues. We instead proceed directly to whether the Magistrate Judge and the District Court erred in finding that the parties entered a valid and enforceable agreement to arbitrate their disputes. We exercise plenary review. *See, e.g., Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 176 (3d Cir. 1999).

Plaintiffs challenge the agreement to arbitrate and its specific components on a number of grounds. We, however, need only consider the dispositive matter of unconscionability. We agree with plaintiffs that the agreement to arbitrate is fundamentally unconscionable. Needing to work for Anthony Crane, they were presented with its terms without any real opportunity to negotiate. The thirty-day time limitation, the restrictions on relief

available to the plaintiffs, and, under the circumstances of this case, the "loser pays" provision for arbitrator's fees and expenses unreasonably favor Anthony Crane to the plaintiffs' detriment. These numerous elements of illegality permeate the overall agreement to arbitrate. Refusing to sever, we must strike down the arbitration agreement as unenforceable.[4]

### III.

Congress enacted the FAA in 1925 in response to the traditional judicial hostility to the enforcement of arbitration agreements. *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). The FAA provides that such agreements are "enforceable to the same extent as other contracts." *Seus v. John Nuveen & Co.*, 146 F.3d 175, 178 (3d Cir. 1998). The enactment establishes a strong federal policy in favor of the resolution of disputes through arbitration. *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Accordingly, "federal law presumptively favors the enforcement of arbitration agreements." *Harris*, 183 F.3d at 178 (citing *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 231 (3d Cir. 1998)). A party to a valid and enforceable arbitration agreement is entitled to a stay

---

4. Plaintiffs also challenge the prohibition on filing an administrative claim and the AAA's "confidentiality" requirements on unconscionability grounds. Because we need not find these specific aspects unconscionable in order to strike down the arbitration agreement, we do not address them.

Anthony Crane argues that we should not consider some assertions of plaintiffs due to a failure to advance such arguments before the Magistrate Judge or the District Court. These include the challenges to the thirty-day limitations period and the requirement that each party generally bear its own costs and attorney's fees. Plaintiffs clearly asserted below that the agreement to arbitrate is unconscionable, and the Magistrate Judge expressly rejected these assertions. Although plaintiffs could have further developed their contentions as to unconscionability, Anthony Crane fully responded to any further elaborations offered on appeal. We therefore consider all of the relevant arguments of the parties.

of federal court proceedings pending arbitration as well as an order compelling such arbitration. *See, e.g.,* 9 U.S.C. §§ 3-4; *Seus*, 146 F.3d at 179.

Defendants apparently contest the ability of a court to consider any challenge to an arbitration agreement on such grounds as unconscionability. In *Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222 (3d Cir. 1997), the Third Circuit indicated that it is for the arbitrator to address "any argument that the provisions of the Arbitration Agreement involve a waiver of substantive rights afforded by the state statute." *Id.* at 231. But a court, before directing the parties to proceed with this favored method of dispute resolution, must still ascertain whether the parties entered a valid agreement to arbitrate. *See, e.g., id.* at 228, 231. 9 U.S.C. § 2 provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

We are to look to the relevant state law of contracts in making this determination. *See, e.g., Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002); *Harris*, 183 F.3d at 179. An agreement to arbitrate may be unenforceable based on a generally applicable contractual defense, such as unconscionability. *See, e.g., Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). According to the Supreme Court, courts must "remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 (1985). Although possibly relevant, considerations of public policy and the loss of state statutory rights are not dispositive in the unconscionability inquiry. The generally applicable standards of this

contractual doctrine continue to dictate the result of any analysis. Consistent with the Supreme Court's call, we have on several occasions dealt with claims that an arbitration contract is invalid on grounds of unconscionability or disparity in bargaining power.[5] *See Harris*, 183 F.3d at 181-84; *Seus*, 146 F.3d at 184; *Great Western Mortgage Corp.*, 110 F.3d at 228-30; *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1118 (3d Cir. 1993).

It appears uncontested that Virgin Islands law furnishes the relevant contractual principles in this case. Statutory law mandates that we turn to "the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute." 1 V.I. Code Ann. § 4.

A. Unconscionability

Section 208 of the Restatement (Second) of Contracts provides:

> If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.

Restatement (Second) of Contracts § 208 (1981).[6]

---

5. At oral argument, Anthony Crane acknowledged that a court may resolve an unconscionability challenge to an arbitration contract.

6. Section 208 is based on a provision of the Uniform Commercial Code:

> (1)  If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

> (2)  When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

11A V.I. Code Ann. § 2-302.

Courts have generally recognized that the doctrine of unconscionability involves both "procedural" and "substantive" elements. *See, e.g., Harris*, 183 F.3d at 181-82 (applying Pennsylvania law); *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir.) (applying California law), *pet. for cert. filed*, 71 U.S.L.W. 3680 (U.S. Apr. 16, 2003). "Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Harris*, 183 F.3d at 181 (citing E. Allan Farnsworth, *Contracts* § 4.28 (2d ed. 1990)). This element is generally satisfied if the agreement constitutes a contract of adhesion. *See, e.g., Ting*, 319 F.3d at 118 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)). A contract of adhesion " 'is one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis.' " *Trailer Marine Transp. Corp. v. Charley's Trucking, Inc.*, 20 V.I. 282, 284 (1984) (citation omitted).

A contract, however, is "not unconscionable merely because the parties to it are unequal in bargaining position." Restatement (Second) of Contracts, *supra*, § 208 cmt. d; *see also, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991); *Great Western Mortgage Corp.*, 110 F.3d at 229; *Pritzker*, 7 F.3d at 1118. An adhesion contract is not necessarily unenforceable. *See, e.g., Seus*, 146 F.3d at 184.

The party challenging the contract therefore must also establish "substantive unconscionability." This element refers to terms that unreasonably favor one party to which the disfavored party does not truly assent. *Harris*, 183 F.3d at 181 (citing *Germantown Mfg. Co. v. Rawlinson*, 491 A.2d 138, 145-47 (Pa. Super. Ct. 1985); *Denlinger, Inc. v. Dendler*, 608 A.2d 1061, 1068 (Pa. Super. Ct. 1992)). According to the commentary accompanying section 208:

> [G]ross inequality of bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion, or may show that the weaker party had no meaningful choice, no real

> alternative, or did not in fact assent or appear to assent to the unfair terms.

Restatement (Second) of Contracts, *supra*, § 208 cmt. d; *see also Plaskett v. Bechtel Int'l, Inc.*, 243 F. Supp. 2d 334, 340 (D.V.I. 2003) (quoting section 208). In the end, unconscionability " 'requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions.' " *Harris*, 183 F.3d at 181 (quoting *Bensalem Township v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1312 (3d Cir. 1994)); *see also, e.g., Seus*, 146 F.3d at 184.

### 1. Procedural Unconscionability

The arbitration agreement in the Hourly Employee Contract was " 'prepared by the party with excessive bargaining power' " and presented to plaintiffs " 'for signature on a take-it-or-leave-it basis.' " *Trailer Marine Transp. Corp.*, 20 V.I. at 284 (citation omitted). Anthony Crane, which conducts business throughout the nation and the world, clearly possessed more bargaining power than two long-time equipment operators with limited educational backgrounds and, at best, very narrow options for other employment. The acceptance of the standard form contract was a condition of employment, and, as the Magistrate Judge acknowledged, prospective employees "may have no realistic ability to modify its terms." App. at 128. Even Anthony Crane conceded for purposes of its motion to stay "that the court could find that the employment contract is one of adhesion." App. at 127. The Magistrate Judge did correctly point out that the arbitration provision is not hidden in small print. Anthony Crane also presents its own account of the orientation meeting, in which a full explanation of the arbitration clauses was provided to plaintiffs and other employees. Plaintiffs nevertheless were still presented with a "take-it-or-leave-it" agreement to arbitrate by a multinational corporation. Because plaintiffs had no real choice but to accept these terms, they have established the existence of procedural unconscionability.

### 2. Substantive Unconscionability

In order to pursue an arbitration proceeding under the Hourly Employee Contract, an employee must present his

or her claim in written form to the General Manager within thirty days of the event providing the basis of the claim. The agreement to arbitrate expressly prohibits such an employee from bringing any claim unless it is filed within thirty days of the last day of employment. We recognize that a provision limiting the time to bring a claim or provide notice of such a claim to the defendant is not necessarily unfair or otherwise unconscionable. But such a time period must still be reasonable. *See, e.g., Order of United Commercial Travelers v. Wolfe*, 331 U.S. 586, 608 (1947) (noting that contractual provision may validly limit time for bringing action as long as "the shorter period itself shall be a reasonable period"); *Soltani v. Western & Southern Life Ins. Co.*, 258 F.3d 1038, 1042-47 (9th Cir. 2001) (upholding six-month limitation provision for bringing suit but striking down 10-day contractual notice of suit requirement as unconscionable). The thirty-day limitations period, however, is clearly unreasonable and unduly favorable to Anthony Crane.

Virgin Islands law generally provides that a tort cause of action may be initiated within two years and establishes a six-year statute of limitations for contractual actions. *See* 5 V.I. Code Ann. § 31(3), (4). Anthony Crane does point out that collective bargaining agreements sometimes mandate limitations periods of less than thirty days and that the Virgin Islands Wrongful Discharge Act provides for an employee to file a written complaint with the Virgin Islands Commissioner of Labor "within thirty (30) days after discharge." 24 V.I. Code Ann. § 77(a). Nevertheless, as the District Court of the Virgin Islands recognized in *Plaskett v. Bechtel International, Inc.*, 243 F. Supp. 2d 334 (D.V.I. 2003), a requirement to notify the employer "within thirty days of the event forming the basis of the claims with the further qualification that such limitation be strictly enforced" is unreasonable. *Id.* at 341. In addition to providing an apparently insufficient time to bring a well-supported claim, such an obligation prevents an employee from invoking the continuing violation and tolling doctrines. The Ninth Circuit has actually struck down more generous one-year limitations periods on the grounds that they deprived the plaintiff of the benefit of the continuing violation doctrine. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d

1165, 1175 (9th Cir. 2003); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002), *cert. denied*, 535 U.S. 1112 (2002); *see also, e.g., Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr. 2d 138, 152 (Ct. App. 1997) (striking down one-year statute of limitation that expressly provides it is not subject to tolling).

Parties do generally benefit from the efficient resolution of disputes. But the requirement in this case inappropriately assists Anthony Crane by making it unnecessarily burdensome for an employee to seek relief from the company's illegal conduct. Such an unfair advantage is only compounded by the fact that Anthony Crane is apparently not required to provide detailed and written notice to an employee of any of its own claims within a strictly enforced thirty-day time period.[7] We therefore find that the thirty-day time restriction is substantively unconscionable.

The arbitration agreement also substantially limits the relief available to plaintiffs. Reinstatement and narrowly defined "net pecuniary damages" constitute the only available forms of relief for a successful employee. The parties also bear their own costs and expenses, including attorney's fees. The Virgin Islands Wrongful Discharge Act, however, provides that a court shall award "reasonable attorney's fees and costs" to a prevailing plaintiff. 24 V.I. Code Ann. § 79. Section 541 also states:

> The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties; but there shall be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorney's fees in maintaining the action or defenses thereto; provided, however, the award of attorney's fees in personal injury cases is prohibited unless the court finds that the complaint filed or the defense is frivolous.

5 V.I. Code Ann. § 541(b).

---

7. The Hourly Employee Contract does require Anthony Crane to submit an arbitration request within fifteen days of the receipt of timely notice.

These restrictions are one-sided in the extreme and unreasonably favorable to Anthony Crane. They prevent an employee from recovering not only his or her attorney's fees but also such potentially significant relief as punitive damages. An employee therefore is not entitled to complete compensation for any harm done and the company is able to evade full responsibility for its actions. Anthony Crane does correctly note that both parties surrendered any eligibility for attorney's fees under section 541. *See Plaskett*, 243 F. Supp. 2d at 340-41 (finding elimination of attorney's fees unconscionable as to Title VII but not substantively unconscionable under Virgin Islands law because both parties surrendered eligibility for such fees). Such a relinquishment, however, clearly helps Anthony Crane, the party with a substantially stronger bargaining position and more resources, to the disadvantage of an employee needing to obtain legal assistance. Furthermore, Anthony Crane did not similarly accept a general restriction of relief for any arbitration claim it may assert against its employees. Under such circumstances, these restrictions are substantively unconscionable.

As an exception to the general obligation that each party to the arbitration pay for costs and expenses, the agreement requires the losing party to "bear the costs of the arbitrator's fees and expenses." App. at 20, 33. The Supreme Court considered the issue of arbitration costs in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000). The purchaser of a mobile home brought claims against several financial institutions pursuant to the Truth in Lending Act and the Equal Opportunity Credit Act. *Id.* at 82-84. The Court rejected the contention that an arbitration agreement that is silent as to arbitration costs is unenforceable because of failure to provide sufficient protection from substantial costs. *Id.* at 89-92. Although acknowledging that high costs "could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum," it found that the " 'risk' " that the plaintiff would bear such prohibitive expenses was too speculative.[8] *Id.* at 91. The Court added:

---

8. The Court further found that the evidence submitted by the plaintiff to demonstrate the cost of arbitration was insufficient. *Green Tree*, 531 U.S. at 91 n.6.

> [Where] a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs. . . . How detailed the showing of prohibitive expenses must be before the party seeking arbitration must come forward with contrary evidence is a matter we need not discuss[.]

*Id.* at 92.

In *Blair v. Scott Specialty Gases*, 283 F.3d 595 (3d Cir. 2002), the Third Circuit considered the enforceability of a "fee-sharing" or "fee-splitting" provision. In this employment discrimination action, the plaintiff asserted both federal and state law claims against her former employer. *Id.* at 598. The arbitration agreement, by reference to AAA rules, effectively required the plaintiff to pay one-half of the arbitrator's compensation and expenses. *Id.* at 604-05. Applying *Green Tree*'s burden-shifting approach, we agreed with the district court that the plaintiff, who formerly worked as a plant manager, did not establish either her inability to pay her share or the high cost of arbitration. *Id.* at 607-08. We specifically observed that the plaintiff's affidavit contained only conclusory assertions of financial distress without any supporting documentation and that she presented no information regarding arbitration costs. *Id.* We, however, determined that the Supreme Court's *Green Tree* ruling entitled a party to limited discovery as to these issues. *Id.* at 608-10. This Court therefore ordered a remand to allow limited discovery and give the plaintiff "the opportunity to prove, as required under *Green Tree*, that resort to arbitration would deny her a forum to vindicate her statutory rights." *Id.* at 610. We further indicated that the defendant should be afforded the chance "to meet its burden to prove that arbitration will not be prohibitively expensive, or as has been suggested in other cases, offer to pay all of the arbitrator's fees." *Id.*

We recently applied the *Green Tree* standard in *Spinetti v. Service Corp. International*, 324 F.3d 212 (3d Cir. 2003). The plaintiff previously worked for the defendant as a "sales counselor." *Id.* at 214. Following the termination of her employment, she alleged that the defendant violated Title

VII and the Age Discrimination in Employment Act. *Id.* In responding to defendant's motion to compel arbitration, the plaintiff argued *inter alia* that the agreement to arbitrate was unenforceable because of its fee-splitting provision. *Id.* at 214-15. The district court refused to enforce this payment scheme, finding that the plaintiff established that the costs of arbitrating her statutory claims were prohibitive. *Id.* at 215, 217-18.

Although reiterating that a party challenging an arbitration contract on the grounds of prohibitive costs has the burden of proving the likelihood of incurring such expenses, we noted that " '*Green Tree* does not provide us with a standard for how detailed the showing of prohibitive expenses must be to support the conclusion that the provision, at minimum, is unenforceable.' " *Id.* at 217 (quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 660 (6th Cir. 2003)). We, however, expressed our satisfaction "that the district court's analysis properly followed the 'case-by-case' approach of *Green Tree* on how to decide if a cost-splitting provision in an arbitration agreement denies potential litigants the opportunity to vindicate their statutory rights." *Id.* Under the arbitration agreement, the plaintiff was required to pay $4250.00 in assorted filing fees, an additional charge of $150.00 for each day of the hearing, and one-half of the cost of an arbitrator. *Id.* The evidence indicated that "a mid-range arbitrator" in the region charges about $250.00 an hour at a minimum per diem rate of $2000.00. *Id.* While the plaintiff made $65,000.00 a year working for the defendant, she did not work for six months following her termination. *Id.* When she obtained employment, she earned less than $300.00 a week, and her monthly food expenses and rent were approximately $2,000.00. *Id.* She was forced to take cash advances from credit cards to cover the difference. *Id.* The district court therefore properly "intended that the employer pay all costs of arbitration." *Id.*

Like the plaintiff in *Spinetti*, Alexander and Freeman submitted evidence as to the rates of the prospective arbitrators, ranging from $800.00 a day to $1000.00 a day. Plaintiffs admittedly did not provide any detailed information about their own financial status. They,

however, needed the job at the St. Croix refinery, and Alexander also apparently had to support three children in college. As discharged refinery workers, they clearly could not meet this financial burden even if the arbitration did not last the seven days they predicted. *See, e.g., Giordano v. Pep Boys - - Manny, Moe & Jack, Inc.*, No. CIV. A. 99-1281, 2001 WL 484360, at *6 (E.D. Pa. Mar. 29, 2001) ("However, nothing in *Green Tree* requires courts to undertake detailed analyses of the household budgets of low-level employees to conclude that arbitration costs in the thousands of dollars deter the vindication of employees' claims in arbitral fora."). Plaintiffs thereby are effectively denied recompense for Anthony Crane's alleged misconduct, resulting in an unfair advantage for their former employer.[9] Anthony Crane does assert that plaintiffs did not allege any inability to pay until their motion to vacate and that it was never given the opportunity to offer to pay the arbitrator's fees and expenses. Even if such an offer to pay constitutes a relevant consideration,[10] the employer possessed numerous opportunities following the submission of this motion to indicate that it would not seek reimbursement from the plaintiffs. But it neither made such an offer nor presented any evidence to challenge plaintiffs' own submissions regarding the arbitrators' rates. *See, e.g., Blair*, 283 F.3d at 607-10 (noting shift in burden). We therefore must find that the "loser pays" provision is unconscionable as to these particular plaintiffs.[11]

---

9. Plaintiffs in their opening brief assert that they were denied the right to discovery regarding the costs of arbitration. Because plaintiffs have shown the existence of prohibitive costs, we need not remand this matter for further proceedings.

10. In *Blair,* this Court indicated that the other party should be given the opportunity to "offer to pay all of the arbitrator's fees." *Blair*, 283 F.3d at 610. However, we apparently rejected such "after-the-fact" offers as irrelevant to the cost inquiry in *Spinetti*. *Spinetti*, 324 F.3d at 217 n.2 (quoting *Morrison*, 317 F.3d at 660). We express no opinion at this time as to the appropriate role of these offers.

11. There does appear to be a question about whether the arbitration cost analysis developed in *Green Tree* and its successors actually applies to a "loser pays" provision. Unlike a fee-splitting arrangement, the "cost-shifting" approach at issue here does not require the parties to share in

We conclude that plaintiffs have sufficiently established both the substantive and the procedural aspects of unconscionability. A multinational corporation presented them with an agreement to arbitrate without providing any opportunity to negotiate its terms. We must find that the thirty-day notice requirement, the various restrictions on remedies as well as the recovery of attorney's fees, and the provision regarding arbitrator's fees and expenses are one-sided and unreasonable. At the very least, these specific provisions are not enforceable.

B.   Severability

Anthony Crane urges us to sever any unenforceable provision and compel arbitration of plaintiffs' claims under the remainder of the arbitration agreement. Applying Virgin Islands contract law, we must turn to Restatement principles. Section 603 of the Restatement (First) of Contracts provides:

> A bargain that is illegal only because of a promise or a provision for a condition, disregard of which will not defeat the primary purpose of the bargain, can be enforced with the omission of the illegal portion by a party to the bargain who is not guilty of serious moral turpitude unless this result is prohibited by statute. Recovery is more readily allowed where there has been part performance of the legal portion of the bargain.

Restatement (First) of Contracts § 603 (1932). The Restatement (Second) of Contracts similarly states:

> (1)   If less than all of an agreement is unenforceable

---

the costs of arbitration but ensures that the "losing party" is responsible for arbitrator's fees and expenses. *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 658 n.3 (6th Cir. 2003) (distinguishing between cost-splitting and cost-shifting). Some courts have refused to strike down such provisions, partly because any costs remain speculative unless and until the objecting party actually loses the arbitration. *See, e.g., Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1260-62 (11th Cir. 2003); *Goodman v. Espe America, Inc.*, No. 00-CV-862, 2001 WL 64749, at *3-*4 (E.D. Pa. Jan. 19, 2001). We, however, need not resolve this question because the parties do not address it.

> under the rule stated in § 178,[12] a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange.
>
> (2) A court may treat only part of a term as unenforceable under the rule stated in Subsection (1) if the party who seeks to enforce the term obtained it in good faith and in accordance with reasonable standards of fair dealing.

Restatement (Second) of Contracts, *supra*, § 184 (footnote added). A court may either refuse to enforce a contract containing an unconscionable provision or "enforce the remainder of the contract without the unconscionable term." *Id.* § 208.

In *Spinetti*, we considered Restatement principles and Pennsylvania case law to determine whether offensive provisions requiring the parties to pay their own attorney's fees and to share the costs of arbitration vitiated the entire agreement to arbitrate. *Spinetti*, 324 F.3d at 213-14, 218-23. Because the primary purpose of the agreement was "to provide a mechanism to resolve employment-related disputes," *id.* at 219, we affirmed the district court's determination to sever the unenforceable provisions and compel arbitration under the remaining terms of the contract. *Id.* at 213-14, 218-23.

Severance is not an appropriate remedy in this case. The Hourly Employee Contract does contain a clause providing that the remaining agreement shall remain in force even if any provision is held to be invalid. Even taking this provision into account, we must still find that unconscionability permeates the agreement between plaintiffs and Anthony Crane and thoroughly taints its central purpose of requiring the arbitration of employment disputes. *See, e.g., Plaskett*, 243 F. Supp. 2d at 345 (refusing to enforce arbitration provisions because of

---

12. Section 178 governs the unenforceability of contractual terms on the grounds of public policy.

numerous unconscionable provisions). Confronting only two illegal provisions, we emphasized that "[y]ou don't cut down the trunk of a tree because some of its branches are sickly." *Spinetti*, 324 F.3d at 214. Plaintiffs in this case were given no real choice but to accept arbitration on Anthony Crane's terms. In addition to facing a burdensome requirement to pay the arbitrator's fees and costs if unsuccessful, an employee must comply with an unreasonable time limitation, lose any right to attorney's fees, and give up the chance to receive any relief beyond either reinstatement or "net pecuniary damages." These draconian terms unreasonably favor Anthony Crane to the severe disadvantage of plaintiffs and other St. Croix employees. The cumulative effect of so much illegality prevents us from enforcing the arbitration agreement. Because the sickness has infected the trunk, we must cut down the entire tree.

In refusing to allow severance, we do not challenge the liberal policy in favor of arbitration. We also continue to recognize the real benefits of arbitration in the employment context and do not by any means intend to discourage the adoption of fair and appropriate arbitration arrangements by employers and their employees. *See id.* at 223. But we cannot give effect to an agreement to arbitrate afflicted by so much fundamental and pervasive unfairness.[13]

---

13. According to the partial dissent, we should allow the District Court to determine in the first instance whether severance of the unenforceable provisions would defeat the central purpose of the parties in entering this agreement to arbitrate. We agree that a district court should ordinarily be accorded the opportunity to rule on the issue of severance based on a sufficiently developed record. But, under the circumstances of this case, no reasonable finder of fact could conclude that severance is appropriate. We are confronted with a procedurally unconscionable agreement containing multiple unreasonable terms. Unconscionability accordingly permeates the essence of this contract. The invalidation of the thirty-day time restriction, the limitations on the recovery of damages and attorney's fees, and the "loser pays" provision leaves little of any substance in the agreement between plaintiffs and their former employer. This agreement cannot be redeemed by permitting further District Court proceedings and the development of a more extensive record.

## IV.

The arbitration agreement between plaintiffs and Anthony Crane is unenforceable under the theory of unconscionability. Because no enforceable contractual provision mandates the arbitration of plaintiffs' claims, the District Court erred in compelling arbitration and dismissing the complaint. Its order therefore will be reversed and the matter remanded to the District Court for further proceedings consistent with this opinion.

ROTH, *Circuit Judge, concurring in part, dissenting in part*:

I agree with the majority that the District Court should be reversed because the provisions of the arbitration agreement relating to notice, remedies, attorney's fees and costs, and the arbitrator's costs and fees are unreasonable. However, I respectfully disagree with the majority's decision to strike the entire arbitration agreement. I would remand to the District Court to determine if the unenforceable provisions are severable. Having concluded that the challenged provisions were enforceable, the District Court did not have an opportunity to rule on whether to strike the entire arbitration agreement, or to sever the unenforceable provisions.

The majority concludes that, under *Spinetti v. Service Corporation International*, 324 F.3d 212 (3d Cir. 2003), the four unenforceable provisions in the arbitration agreement at issue in the present case cannot be severed from the rest of the arbitration agreement. In *Spinetti*, we held that unenforceable provisions regarding the costs and fees of arbitrators and attorneys are severable because these provisions cannot "be considered the essential part of the bargain," which is "to provide a mechanism to resolve employment-related disputes . . . ." *Id.* at 219.[1] Contrary to the majority's conclusion, it is not clear from the record before us that the unenforceable provisions at issue in the present case constitute the central part of the bargain, such that they cannot be severed under *Spinetti*.

The majority fails to explain how the statute of limitations and damages available are any more related to the central purpose of choosing a forum in which to resolve disputes than the provisions relating to the allocation of

---

1. In *Spinetti*, this Court applied Pennsylvania law to determine whether to sever the unenforceable provisions. *See* 324 F.3d at 219. However, the law of the Virgin Islands does not differ materially in this respect. Both Pennsylvania and Virgin Islands law rely on the Restatement (First) of Contracts and the Restatement (Second) of Contracts, which recognize that an unenforceable provision may be severed if the unenforceable provisions are not an essential part of the agreement. *See id.* (quoting Restatement (First) of Contracts § 603 (1932); Restatement (Second) of Contracts § 194 (1981)).

costs and fees for attorneys and arbitrators that the *Spinetti* Court found are severable. Apparently the majority believes that *Spinetti* is distinguishable because the arbitration agreement in *Spinetti* only involved two unenforceable provisions, while the arbitration agreement in the present case involves four unenforceable provisions (two of which were similar to the unenforceable provisions in *Spinetti*). However, the issue for purposes of severability analysis is not the number of unenforceable provisions, but rather whether those provisions go to the central purpose of the agreement. To continue the analogy that the majority draws from *Spinetti*, it does not matter whether two or four branches are sick, the issue in determining whether to chop down the tree is whether the trunk can survive.

The majority also relies on the extent to which the four provisions are unfair in deciding not to sever them from the rest of the contract. This analysis improperly blurs the issue whether the four provisions are unenforceable and the issue whether the provisions are severable if they are unenforceable. The degree to which the unenforceable provisions are unfair is not relevant to the decision whether to sever them or strike the entire agreement because, in either case, the plaintiffs will not be subject to the unfair provisions. To draw further upon the majority's analogy, since the sickly branches will be removed, it does not matter how sick the branches are, so long as they have not infected the trunk.

While it may turn out that the unenforceable provisions, taken together, are an essential part of the bargain struck between the parties, the majority's reasoning does not adequately support this conclusion. Rather than attempting to resolve this issue at this time, the more appropriate course of action would be to give the District Court the opportunity to determine, in the first instance, whether severing the unenforceable provisions would defeat the parties' central purpose in entering into the arbitration agreement. *Id.*; Restatement (First) of Contacts § 603; Restatement (Second) of Contracts § 184. This approach would allow for the development of a more extensive record on the issue, which in turn would give us more to work with on appeal. In particular, it would permit the District

Court to make the factual determination of what the inclusion of a severability clause, which was not part of the arbitration agreement at issue in *Spinetti*, reveals about the relationship between the struck provisions and the parties' intentions in entering into the agreement. Accordingly, I respectfully concur in part and dissent in part.

A True Copy:
        Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*