NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 11-1882
———————

JOSEPH A. ANTKOWIAK, on behalf of himself and all others similarly situated

v.

TAXMASTERS; TAXMASTERS, INC.; TMIRS ENTERPRISES LTD; TM GP
SERVICES, LLC; TM GP SERVICES, LLC, d/b/a Taxmasters; PATRICK R. COX;
JEFFREY AARON STEINBERG,
Appellants
———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:10-cv-03331-LS)
District Judge: Honorable Lawrence F. Stengel
———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 06, 2011

Before: HARDIMAN, BARRY, and VAN ANTWERPEN, *Circuit Judges*.

(Filed : December 22, 2011)
———

OPINION OF THE COURT
———

VAN ANTWERPEN, *Circuit Judge*.

Appellants TaxMasters, TaxMasters, Inc., TMIRS Enterprises, Ltd., TM GP

Services, LLC, Patrick R. Cox, and Jeffrey Aaron Steinberg (hereinafter "TaxMasters")

appeal the District Court's denial of its motion to compel arbitration. For the reasons that follow, we will vacate and remand.

## I. Facts

Because we write solely for the parties, we recount the facts and proceedings only to the extent required for resolution of this appeal. TaxMasters, a "tax resolution" firm based in Houston, Texas, advertises on national television that it can "solve" delinquent taxpayers' problems with the IRS. TaxMasters's advertisements encourage distressed taxpayers to call the company's toll-free number for a "free consultation" with a "tax consultant." On December 29, 2008, Appellee, Joseph Antkowiak, called the toll-free number to obtain assistance with his tax problems. During the consultation, Antkowiak was told that TaxMasters could represent him for $4,000 and that, if he couldn't afford to pay in one lump sum, he could make an initial down payment and pay through an installment plan. Antkowiak agreed to the installment plan, under which he was required to make an initial down payment of $500. Although the parties dispute when Antkowiak actually made this down payment,[1] TaxMasters has taken the position with other

_____

[1] TaxMasters claims that Antkowiak did not make the down payment until he returned a signed written Engagement Agreement on January 7, 2009. Antkowiak, however, claims that he gave TaxMasters his credit card information during the initial phone call and that TaxMasters charged his card prior to him signing the Engagement Agreement. Although TaxMasters has charged other customers' credit cards on the same day as the initial phone consultation, App. 163–64, and prior to the Engagement Agreement being signed, App. 189, the present record does not include financial records which show when Antkowiak's card was actually charged.

2

customers that the initial phone call creates a "legal binding agreement" under which the customer is liable for the full contract price.[2] App. 189.

After the December 29 phone consultation, TaxMasters sent Antkowiak a copy of the "Engagement Agreement," a written document containing an arbitration clause as well as other specific terms and conditions of the contract. Based on the documented experience of other customers, TaxMasters does not always disclose all of these terms and conditions, including the arbitration clause, during the phone consultation. *See* App. 118–75. For example, TaxMasters's representatives do not always disclose that the down payment is non-refundable, *see id.*, or that the Engagement Agreement relieves TaxMasters of any orally professed obligation to begin working on the customer's case "immediately" upon receiving the first payment. *See* App. 166. The arbitration clause contains the following four conditions: (1) a requirement that Antkowiak, but not TaxMasters, use arbitration to resolve all claims;[3] (2) a bar on class action arbitration; (3) a forum-selection clause specifying Harris County, Texas, as the forum for all disputes; and (4) an expense provision requiring Antkowiak to "bear all costs of arbitration."

---

[2] TaxMasters has taken this position irrespective of whether it performed any further services and whether or not there was a subsequent written agreement. *See* App. 189.

[3] The Engagement Agreement provides: "Client agrees that any and all claims. . . that Client has . . . shall be settled by binding arbitration." App. 285. The District Court interpreted this to mean that the agreement imposes a unilateral arbitration requirement on Antkowiak. Although the provision also provides that "[e]ither party may demand arbitration by filing with the American Arbitration Association," TaxMasters has not objected to the District Court's interpretation in its appeal.

3

Consistent with the experience of other customers, Antkowiak states that TaxMasters did not disclose the arbitration clause during his phone consultation.[4]

On January 7, 2009, Antkowiak faxed a signed copy of the Engagement Agreement to TaxMasters and thereafter made two additional payments of $500. Antkowiak stopped making payments, however, when it became apparent that TaxMasters was not working on his case. After TaxMasters threatened to take legal action if Antkowiak did not pay the remaining $2,500 due on his account, Antkowiak filed a class action suit alleging deceptive sales practices and improper debt collection activities in violation of the Truth in Lending Act, the Fair Debt Collection Practice Act, and various Pennsylvania statutes. TaxMasters responded by filing a motion to compel arbitration pursuant to the arbitration clause. The District Court denied TaxMasters's motion based on its conclusion that the arbitration clause is unconscionable under Pennsylvania law.[5] Although the District Court did not expressly find any of the four individual arbitration terms to be specifically unconscionable, it found that, when bundled together, the four terms created an unconscionable agreement. *Antkowiak v.*

---

[4] To the extent that Antkowiak formed an oral agreement during the phone call, the Engagement Agreement contains an integration clause stating: "[A]ll prior contracts and agreements between the parties of any kind and executed at any time prior to the date of this agreement shall . . . be deemed to be modified to include and adopt the arbitration terms of this agreement." App. 285. Antkowiak's argument that he received no consideration for this modification is addressed below.

[5] The District Court also granted in part and denied in part TaxMasters's Rule 12(b)(6) motion to dismiss for failure to state a claim.

*TaxMasters*, 779 F. Supp. 2d 434, 446–47 (E.D. Pa. 2011).  Thereafter, TaxMasters filed a timely appeal.

## II. Legal Background

We have appellate jurisdiction over this dispute pursuant to 9 U.S.C. § 16(a)(3). When a district court rules on a motion to compel arbitration, we review the decision *de novo*.  *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009).  Motions to compel arbitration are decided under the same standard applied to motions for summary judgment.  *Id.*  Summary judgment is only proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party opposing a motion to compel arbitration bears the burden of proving the arbitration clause unenforceable.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).  All reasonable inferences from the evidence are to be granted to the party opposing arbitration.  *Kaneff*, 587 F.3d at 620.

Under the Federal Arbitration Act (FAA), arbitration clauses are just as "valid, irrevocable, and enforceable" as any other contractual obligation, 9 U.S.C. § 2, and cannot be invalidated by "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011).  Accordingly, courts may only invalidate arbitration clauses on the grounds of "generally applicable contract defenses, such as fraud, duress, or unconscionability."  *Id.* (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

5

In Pennsylvania, unconscionability is a general defense to contract formation. *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007). For a contract to be unconscionable, it must be *both* procedurally and substantively unconscionable. *Gay v. CreditInform*, 511 F.3d 369, 392 (3d Cir. 2008). Procedural unconscionability exists when the party challenging the contractual provision had "an absence of meaningful choice in accepting [it]." *Denlinger, Inc. v. Dendler*, 608 A.2d 1061, 1068 (Pa. Super. Ct. 1992) (citing *Witmer v. Exxon Corp.*, 434 A.2d 1222, 1228 (Pa. 1981)). Substantive unconscionability exists when the contractual provision is "unreasonably favorable" to the party who imposed it. *Witmer*, 434 A.2d at 1228.

### III. Discussion

#### A) Procedural Unconscionability

We agree with the District Court's conclusion that, under the facts of this case, the arbitration agreement is procedurally unconscionable. Contracts of adhesion are *per se* procedurally unconscionable under Pennsylvania law. *McNulty v. H & R Block, Inc.*, 843 A.2d 1267, 1273 n.6 (Pa. Super. Ct. 2004); *see also Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 201 (3d Cir. 2010). A contract of adhesion is a "form contract prepared by one party, to be signed by the other party in a weaker position, [usually] a consumer, who has little choice about its terms." *McNulty*, 843 A.2d at 1273; *cf. Concepcion*, 131 S. Ct. at 1750 ("[T]he times in which consumer contracts were anything other than adhesive are long past."). Here, Antkowiak produced admissions showing that TaxMasters considers a customer liable for the full contract price agreed to during the phone consultation

6

irrespective of whether the customer ever signed the Engagement Agreement.[6]

Antkowiak has also produced evidence from tape-recorded phone consultations showing that TaxMasters's representatives do not disclose the arbitration clause during the initial phone call, *see* App. 118–75, and Antkowiak states that he was not informed of the clause. We believe this evidence and the reasonable inferences arising therefrom are sufficient to demonstrate that the arbitration agreement was a contract of adhesion. For these reasons, we agree that the arbitration agreement is procedurally unconscionable. There remains, however, the question of whether the agreement is also substantively unconscionable.

### B) Substantive Unconscionability

In its discussion, the District Court expressed significant concern with the class action waiver. This concern, however, was based on case law that has subsequently been overruled by the Supreme Court. *Concepcion*, 131 S. Ct. at 1748 (2011); *Litman v. Cellco P'ship*, 655 F.3d 225, 231 (3d Cir. 2011) (stating that *Concepcion*'s "broad and clear" holding preempts "impos[ing] class arbitration despite a contractual agreement for individualized arbitration"). Because it is unclear to what extent the District Court's concern with the class action waiver influenced its conclusion that the arbitration

---

[6] Antkowiak has produced an October 26, 2009 letter from TaxMasters wherein TaxMasters informed a customer that the phone consultation created a "legal binding agreement." App. 189. TaxMasters refused the customer's request for a refund, even though he had never signed the Engagement Agreement. TaxMasters also informed the customer that he was "liable for the remaining fee of $7,150.00," even though TaxMasters had not provided any additional services following the consultation. *Id.*

7

agreement is unconscionable *in toto*, we will remand to ensure that the disposition of this case is consistent with *Concepcion*.

We also believe that prior precedent demands further factual development with respect to the substantive unconscionability of the "bear all costs" provision. While the requirement that Antkowiak bear all arbitration costs is notably more one-sided than expense provisions we have previously considered,[7] the provision is only substantively unconscionable if it prevents Antkowiak from vindicating his rights in the arbitral forum. *See Green Tree*, 531 U.S. at 90–91. To make this showing, we have required a party challenging an expense provision to show (1) the projected costs that would apply and (2) the party's inability to pay those costs. *See Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 283–85 (3d Cir. 2004); *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 268–69 (3d Cir. 2003). Because this evidence is not currently in the record, we will remand for further factual development to determine the projected costs that Antkowiak will bear and his ability to pay them.[8] We reject TaxMasters's assertion, however, that its post-litigation offer to pay Antkowiak's arbitration costs has any bearing on this inquiry. *See*

_____

[7] Under the expense provisions we previously considered, arbitration costs were either split equally among the parties, *e.g., Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 198 (3d Cir. 2010), or were imposed on the losing party, *e.g., Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 273 (3d Cir. 2004). Here, the clause imposes all of the costs on Antkowiak, irrespective of the outcome.

[8] As part of the determination of the projected costs, the District Court should determine whether the expense provision encompasses attorney fees. *See, e.g.*, *Nino*, 609 F.3d at 203 (finding that provision requiring payment of attorney's fees conflicted with fee-shifting statute and thereby deprived party of ability to vindicate its federal rights).

*Nino*, 609 F.3d at 205; *Parilla*, 368 F.3d at 285; *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 217 n.2 (3d Cir. 2002).

Finally, if after further factual development the District Court finds that the expense provision is substantively unconscionable, an analysis should be conducted to determine if it can be severed from the remainder of the arbitration clause. Consistent with the "equitable override" principle in general contract law, *see Parilla*, 368 F.3d at 288–89 (discussing Restatement (Second) of Contracts § 184(1)), an unconscionable provision can be severed from the remainder of an arbitration agreement (1) if the provision is not "an essential part of the agreed exchange," or (2) if the provision does not evince "a systematic effort to impose arbitration . . . as an inferior forum." *Nino*, 609 F.3d at 206–07 (quoting *Parilla*, 368 F.3d at 288; *Spinetti*, 324 F.3d at 214). Since a finding of non-severability would render moot TaxMasters's objection to the District Court's use of a "totality-of-the-circumstances" or "bundling" approach, it is unnecessary to decide here whether such an approach is available under Pennsylvania law.

**C) Consideration**

In his reply brief, Antkowiak provides an additional basis for invalidating the arbitration agreement. According to Antkowiak, the Engagement Agreement materially modified the binding oral contract that he and TaxMasters formed during the phone consultation. *See J.W.S. Delavau, Inc. v. E. Amer. Transp. & Warehousing, Inc.*, 810 A.2d 672, 681 (Pa. Super. Ct. 2002) ("[O]nce a contract has been formed, its terms may be modified only if both parties agree to the modification and the modification is founded

9

upon valid consideration."). Since Antkowiak claims he received no additional consideration for signing the Engagement Agreement, he claims any of the Agreement's provisions (including the arbitration clause) that materially alter the oral contract are void for lack of consideration. Even if we were to assume that this is an appropriate matter for a court, and not an arbitrator, to decide, *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006), the argument is unavailing. The Engagement Agreement imposes many specific responsibilities upon TaxMasters.[9] Unless all of these responsibilities were agreed to during the phone call (an unlikely scenario which runs directly counter to Antkowiak's own evidence[10]), the Engagement Agreement would not fail for lack of consideration. Accordingly, we find no merit in this argument.

### D) Defendants' Standing to Compel Arbitration

Antkowiak also argues that TMIRS is the only defendant with standing to compel arbitration. Antkowiak bases this argument on the fact that TMIRS is the only defendant actually named in the Engagement Agreement. However, because this raises a question

---

[9] For just a few examples, TaxMasters agreed to "analyze Client financial data submitted in the form requested by [TaxMasters]," "prepare the IRS Form 656 for submission of an offer in compromise with the IRS of federal tax obligations," "contact the IRS to seek reinstatement of the settlement forms previously held by Client," and "[n]egotiat[e] on behalf of client with IRS agents to establish payment plans and other alternatives to payment plans." While Antkowiak may perceive this additional consideration as trivial in nature, it is more than a mere "peppercorn" and not for this court to weigh.

[10] Antkowiak has provided the complete transcript of a phone consultation between TaxMasters and another customer. *See* App. 118–75. At no point during this consultation does TaxMasters's representative spell out all of the specific responsibilities which TaxMasters assumes under the Engagement Agreement.

10

of contract interpretation, it is a matter for an arbitrator, not a district court, to decide. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003) ("[M]atter[s] of contract interpretation should be for the arbitrator, not the courts, to decide.").

## IV. Conclusion

For the foregoing reasons, we will vacate the District Court's decision and remand for proceedings and findings consistent with this opinion.