**Tod BOLINGER Plaintiff,**

v.

**VIRGIN ISLANDS TELEPHONE CORP., and Innovative Communication Corp. Defendants.**

**No. CIV.A.2002/0049.**

District Court, Virgin Islands, D. of St. Croix.

Oct. 29, 2003.

---

Lee J. Rohn, Law Offices of Lee J. Rohn, Christiansted, VI, Counsel for Plaintiff.

Joel H. Holt, Christiansted, VI, Counsel for Defendants.

## OPINION REGARDING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND PLAINTIFF'S MOTIONS TO AMEND THE COMPLAINT AND TO CITE ADDITIONAL AUTHORITY

BROTMAN, District Judge.

Plaintiff Todd Bolinger,. ("Bolinger" or "Plaintiff") initiated this action on April 23, 2002, in the St. Croix Division of the District Court for the United States Virgin Islands, asserting claims for fraud and breach of contract against his employer, Virgin Islands Telephone Corporation ("VITELCO"), and its parent company, Innovative Communication Corporation ("ICC"). This Court has jurisdiction over this matter pursuant to section 22(a) of the Revised Organic Act of 1954 and 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of costs and interest. Presently before this Court are Plaintiff's motions to amend the complaint and to cite additional authority and Defendant's motion to compel arbitration according to the terms of Plaintiff's employment contract. For the reasons set forth below, Plaintiff's motion to amend the complaint will be granted and the motion to cite additional authority will be denied. Defendant's motion to compel arbitration will be granted.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Todd Bolinger entered into a contract with Defendant VITELCO to

serve as the company's Director of Technical Support Services for a period of one year commencing on April 19, 1999. (Compl. at ¶ 6). The contract, which by its terms, was renewable on an annual basis, entitled Bolinger to a broad range of compensation and benefits, including: a minimum base salary of $125,000 per year; use of a fully insured company vehicle "for both business and personal use;" full reimbursement for phone services (both local and long distance) and "all travel expenses"; $2,500 per month for housing expenses, and participation in the company's standard retirement and health insurance plans. (Compl. At ¶ 16–17). The contract also contained an arbitration clause which provides as follows:

> SECTION 5.06. Binding Arbitration. Any disputes under or in any way relating to this Agreement, the employment or any relations between the parties, or wrongs allegedly done to the Employee shall be submitted solely to arbitration under the commercial rules of the American Arbitration Association, and will be determined in a sealed proceeding.

(Def.'s Opposition to Motion to Amend at Exhibit A).

Although Plaintiff did not receive a renewal contract in accordance with the terms of his employment agreement, Plaintiff's job title was changed from Director of Technical Support to Vice–President of Operations in February 2001. Bolinger's employment continued uninterrupted until October 2001, when he was called into the office of VITELCO's president, Samuel Ebberson, and informed that his employment was being terminated. (Compl. at ¶ 8; Pl.'s Opposition to Def.'s Motion to Stay and Order Arb. at 1). Plaintiff was handed a notice of termination and then allegedly coerced under "extreme duress" into signing a broadly drafted release which, by its terms, relinquished his right to pursue any present or future claims against the company. (Id. at ¶ 9–12). In exchange for signing the release, Bolinger received a settlement of $20,800. (Reply to Pl.'s Opp. to Def.'s Motion to Compel Arbitration at Exhibit A).

Shortly thereafter, Bolinger filed a two-count complaint in this Court, against both VITELCO and its parent company, ICC, asserting claims for breach of contract (Count I) and fraud (Count II). On May 10, 2002, Defendants filed their answer, along with a motion for an order staying the proceedings in this matter and compelling Bolinger to submit to binding arbitration in accordance with Section 5.06 of his employment agreement. Bolinger filed opposition to the motion to compel claiming that the arbitration clause contained within the contract did not control because the contract was not renewed. (Pl.'s Opp. to Def.'s Motion to Compel Arbitration at 1). In the alternative, Plaintiff argues that the costs of arbitration are prohibitive, making it unlikely that Plaintiff could vindicate his rights in an arbitral forum. (Id. at 2).

Plaintiff moved to amend the complaint on June 6, 2003, seeking to add to the existing claims for breach of contract and fraud, allegations of misrepresentation (Count III), wrongful discharge (Count IV) and intentional or negligent infliction of emotional distress so outrageous, fraudulent or reckless as to entitle Plaintiff to an award of punitive damages (Counts V–VI). Defendant filed opposition to Plaintiff's motion to amend claiming that the proposed amendments are futile.

On August 28, 2003, Plaintiff filed a motion to cite additional authority, namely *Alexander, et. al. v. Anthony Intl.*, 341 F.3d 256 (3rd Cir.2003), presently pending before the Third Circuit, in support of his opposition to Defendant's motion to compel

arbitration.[1] In *Alexander*, the Plaintiff, who possessed a seventh-grade education, worked for Hess Oil refinery for twenty years as a heavy equipment operator. *Id.* Hess contracted with Defendant Anthony Crane to provide heavy equipment services, including the services of Plaintiff. Before commencing work with Anthony Crane, Plaintiff attended an orientation meeting during which he received an hourly employment contract. Plaintiff was required to sign the contract as a condition of employment. That contract included an arbitration clause which provided, among other things, that employees must bring disputes within thirty days and that the losing party would bear the costs of arbitration. The Third Circuit held that the arbitration agreement was "fundamentally unconscionable" because the plaintiffs had no "real opportunity to negotiate," and the thirty-day time limitation and the "loser pays" provision "unreasonably favor[ed] Anthony Crane to the plaintiff's detriment." *Id.* at 262–63. In making its ruling, the Third Circuit, applying principles of contract law, found that the arbitration agreement was unenforceable because it was both procedurally and substantively unconscionable. *Id* at 266.

### DISCUSSION AND ANALYSIS

## I. DEFENDANT'S MOTION TO COMPEL ARBITRATION

 Defendant moves to compel arbitration in accordance with the arbitration clause contained in Plaintiff's employment contract and pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. The FAA "establishes a federal policy favoring arbitration" and was enacted to "reverse centuries of judicial hostility to arbitration agreements." *Shearson/American*

*Express, Inc. v. McMahon*, 482 U.S. 220, 225, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Guided by that policy, federal courts have held that when interpreting an agreement to arbitrate, "all ambiguities must be resolved in favor of arbitrability." *Smith v. The Equitable*, 27 F.Supp.2d 565, 568 (E.D.Pa.1998) (holding that an agreement to arbitrate should be enforced "unless it can be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute"). .

 Because arbitration is a matter of contract, it is for the court to determine whether the parties agreed to arbitrate the claims in dispute. *Laborers' Int'l Union v. Foster Wheeler Corp.*, 868 F.2d 573, 576 (3rd Cir.1989); *Audio Video Ctr. v. First Union Nat'l Bank*, 84 F.Supp.2d 624, 625 (E.D.Pa.2000). The Court must engage in a limited review to establish whether there is an agreement to arbitrate and whether the dispute falls within the scope of that agreement. *In re The Prudential Ins. Co. of America*, 924 F.Supp. 627 (D.N.J.1996). In assessing whether a dispute falls within the scope of an arbitration clause, the court should focus "on the factual allegations in the complaint rather than the legal causes of action asserted." If the allegations involve matters covered by the arbitration agreement, "the claims must be arbitrated, regardless of the legal labels ascribed to the claims." *RCM Technologies, Inc. v. Brignik Technology, Inc.*, 137 F.Supp.2d 550, 553 (D.N.J.2001) (Brotman, J.) (citations omitted).

 Plaintiff in this case disputes the existence of an enforceable contract, claiming that the employment contract lapsed after it was not renewed, and that the arbitration clause does not control. In the

---

1. On September 30, 2003 the Third Circuit issued an order denying Appellee's petition for *en banc* rehearing, limiting the matter to Panel rehearing only.

alternative, Plaintiff argues that if the arbitration clause is enforceable, the costs are prohibitive. In determining whether the employment contract is enforceable, the Court applies general principles of contract as expressed in the Restatement. *See* 1 V.I.C. § 4. With respect to expired employment contracts, under the Restatement a contract may be inferred from fact. *See* Restatement Second of Contracts § 19(1) (stating that the "manifestation of assent may be made wholly or partly by written or spoken words or by other acts or failure to act"). Accordingly, an employment contract may survive expiration where the parties' conduct manifests an intent to continue its terms. This principle was affirmed in *Luden's Inc. v. Local Union No. 6 of the Bakery*, 28 F.3d 347 (3rd Cir.1994). In that case, the Court concluded that the duty to arbitrate contained in a collective bargaining agreement where one party had unilaterally terminated the agreement continued as a term-in-fact. The Court relied on common law contract authority stating that:

> General principles of contract law teach us that when a contract lapses but the parties to the contract continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or through conduct, that it no longer wishes to continue to be bound thereby, or both parties mutually intend that the terms not survive. The rationale for this rule is straightforward: when parties in an ongoing, voluntary, contractual relationship which by its nature generally implies that some mutually agreed upon rule governs its configuration, continue to behave as before upon the lapse of the contract ... each party may generally reasonably expect that the lapsed

agreement's terms remain the ones by which the other party will abide.

*Id.* at 355–356.

Although *Luden's* involved an arbitration clause contained in a collective bargaining agreement (CBA), other federal courts have applied the ruling in *Luden's* to individual employment contracts to find that arbitration agreements contained in expired agreements control based on common law contract principles where the parties' conduct implies the continuation of the original agreement. *In Kropfelder v. Snap–On Tools Corp.*, 859 F.Supp. 952, 954 (D.Md.1994), the plaintiff signed an employment contract which contained an arbitration clause, but did not contain an automatic renewal provision. Plaintiff was given a renewal contract for the two years following the commencement of his employment but was not given a renewal on the year preceding his termination. The employer attempted to compel arbitration when plaintiff brought suit seeking to recover benefits under the employer's severance plan. Plaintiff argued that in the absence of a renewed contract, he was not bound to arbitrate under the original employment contract terms. Relying on general principles of contract, the court in *Kropfelder* held that the failure to sign a new contract "would not appear enough to rebut the presumption favoring extension of the terms of definite contracts with specific arbitration clauses—especially in light of the strong federal policy favoring arbitration." *Id.* at 955 ( "[w]hen a contract of employment for a definite time has been made, and the employee's services are continued after the definite time without objection, the inference is ordinarily that the parties have assented to another contract for a term of the same length with the same salary and conditions of service") (citations omitted).

Further, while there appears to be some disagreement among the circuits as to whether arbitration clauses contained in expired CBA's are enforceable based on common law contract principles, those courts declining to extend the holding in *Luden's* to expired CBA's generally agree that traditional contract rules do govern the enforceability of arbitration clauses contained within expired individual employment contracts. *See Teamsters Local Union No. 122 v. August A. Busch & Co.*, 932 F.Supp. 374, 380 (D.Mass.1996) ("Luden's approach essentially shifts the burden of establishing the nonexistence of an implied-in-fact contract to the employer. *In the context of ordinary employment contracts this may make some sense.* The expiration of an employment contract extinguishes all further legal obligation of the parties. As such, the continued observance by parties of certain terms of an expired contract may properly give rise to an inference that they intend to be bound by all of the terms of the expired agreement") (citations omitted)(emphasis added); *see also Williamsbridge Manor Nursing Home v. Local 144*, 107 F.Supp.2d 222, 226 (S.D.N.Y.2000) ("Post–CBA conduct occurs within a different legal paradigm than conduct pursuant to an ordinary employment contract. 'When the employee's services are continued after the expiration of the definite time of the contract without objection, the inference is ordinarily that the parties have assented to another contract.' The same is not true under collective bargaining agreements") (citations omitted).

Plaintiff argues that there is no enforceable contract because the employment contract was not renewed, and that Plaintiff's promotion created a new agreement.[2] With respect to Plaintiff's claim that his promotion created a new agreement, with the exception of the change of Plaintiff's title from Director of Technical Services to Vice President of Operations, Plaintiff does not allege that any other terms of the original contract were changed. In fact, Plaintiff's salary was exactly the same at the time of hire as it was when he was terminated. (*See* Reply to Pl.'s Opposition to Mot. to Compel Exhibit A). Plaintiff's continued employment beyond the original one-year agreement at the same rate of pay supports observance of the original contract terms.

■ There is no indication that Plaintiff renounced the original contract or that its material terms were superseded by a new agreement. Although neither party asserts that the release signed during the termination meeting, which provided plaintiff with a settlement in the sum of $20,800, created a new contract which supersedes the terms of the existing contract, the Court recognizes the potential for such a claim. However, an arbitration contract is "presumed to survive the expiration of that contract unless there is some express or implied evidence that the parties intend to override that presumption." *See Berkery v. Cross Country Bank*, 256 F.Supp.2d 359, 369 (E.D.Pa.2003). Where a dispute concerning the enforceability of an arbitration clause is "over a provision of [an] expired agreement, the presumptions favoring arbitrability must be negated ex-

**2.** Plaintiff originally argues that Defendant breached their contract; however, in opposition to Defendant's motion to compel arbitration Plaintiff contends that there is no enforceable contract because the agreement expired and because Plaintiff was promoted, creating a new agreement. The Court recognizes that Plaintiff's argument creates an inconsistency; however, Plaintiff may make alternative arguments pursuant to Fed. R.Civ.P. 8(e)(2), and the Court need not reconcile Plaintiff's conflicting position to reach its result.

pressly or by clear implication." *Id.* at. The release in this case does not add language which expressly rescinds the arbitration agreement. Furthermore, our task here is solely to determine whether the contract which calls for arbitration is enforceable and not to reach the merits of plaintiff's legal claims. *Id.* at 365. Because plaintiff's amended complaint raises claims based on the enforceability of the release, this Court will leave any question regarding the merits of those claims and the enforceability of the release to the arbitrator. In light of the federal policy favoring arbitration, the Court finds that the arbitration clause is enforceable

 Plaintiff also argues that if the arbitration clause is enforceable, the Court should nevertheless deny the motion to compel because he cannot afford the costs of arbitration. Notwithstanding the federal policy favoring arbitration, the resolution of claims through arbitration is only appropriate when "the prospective litigant effectively may vindicate [his or her] statutory right in the arbitral forum." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). An inquiry into the costs of arbitration is appropriate in determining whether a claim may be effectively vindicated. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 605 (3rd Cir.2002). That determination should be made on a case-by-case basis and should include an evaluation of the costs of arbitration, the claimant's ability to pay, and whether any "cost differential is so substantial as to deter the bringing of claims." *Id.* at 609. The burden of showing that excessive costs preclude enforcement of an arbitration provision rests with the party resisting arbitration. *Id.* at 607.

Plaintiff's arbitration clause in this case calls for resolution of claims under "the commercial rules of the American Arbitra-tion [Association]." (Def.'s Opposition to Pl.'s Motion to Amend Exhibit A). Those standards dictate that costs "shall be borne equally by the parties." (Pl.'s Opposition to Def.'s Motion to Stay and Order Arbitration). Plaintiff expects that costs of arbitration will exceed $14,000 based on sample resumes of arbitrators averaging $1,000 to $1,200 per day, five days of arbitration and additional costs. (Attachment to Pl.'s Opposition to Motion to Stay and Order Arbitration at 11). Defendant argues that one day should be sufficient to resolve plaintiff's claims through arbitration because Plaintiff signed a release of any claims when he accepted his severance. Even accepting Plaintiff's generous projection of his $7,000 share of the costs of arbitration, in light of the fact that Plaintiff earns over $27,000 per year, received a severance of $20,800 and has an IRA in the amount of $60,000, Plaintiff's assets are sufficient to assure that he is not denied access to the arbitral forum. However, in the event that the arbitrator finds that Plaintiff's costs warrant reallocation, under R–45 of the American Arbitration Association Rules and Procedures, the arbitrator "may grant any remedy or relief that the arbitrator deems just," and may "assess and apportion the expenses, and compensation related to such award as the arbitrator determines is appropriate." (Attachment to Pl.'s Opposition to Motion to Stay and Order Arbitration). For these reasons, the Court grants Defendant's motion to compel arbitration.

## II. PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

 Plaintiff seeks to amend the complaint, adding to existing claims for fraud and breach of contract, additional claims for misrepresentation, wrongful discharge and intentional or negligent infliction of emotional distress. Rule 15(a) of the Fed-

eral Rules of Civil Procedure provides that a party may amend its pleadings "once as a matter or course at any time before a responsive pleading is served." Otherwise, a party may amend the pleadings "only by leave of court or by written consent of the adverse party; and leave *shall be freely given when justice so requires.*" Fed.R.Civ.P. 15(a) (emphasis added). In making a decision to amend, the court is "guided by the policy that a party ought to be afforded the opportunity to test the claim on the merits." *Daniel v. Government of the Virgin Islands*, Civ. A. No.1992–0070, 1994 WL 392236 (D.Vi. 1994). In this case, since responsive pleadings have been filed, leave of court is required to amend.

Although the federal rule and its underlying policy favors liberal allowance of amendments to pleadings, "the right to amend is not absolute." *Lord v. Fairway Electric Corp.*, 223 F.Supp.2d 1270, 1275 (M.D.Fla.2002). The decision whether to grant or deny such a requests "rests within the court's discretion." *Daniel*, Civ. A. No.1992–0070, 1994 WL 392236 at *4 (D.Vi.1994). There are several factors that a court may consider in evaluating a motion to amend. Those factors include: delay in bringing the motion, futility of the amendment and prejudice to the opposing party. *Newfound Management Corp. v. Sewer*, 34 F.Supp.2d 305, 317 (D.Vi.1999) (Brotman, J.). Of these factors, the "most important and most frequent reason for denying leave to amend is prejudice to the opposing party." *Daniel*, Civ. A. No.1992–0070, 1994 WL 392236 at *4 (citations omitted). With respect to the futility, a court may deny a motion to amend based upon futility where "the amendment would not survive a motion to dismiss." *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3rd Cir.1983); *Harrigan v. Caneel Bay, Inc.* 745 F.Supp. 1122 (D.Vi.1990) (Brotman, J.).

■ Applying these rules to the present case, the court concludes that plaintiff's request to amend should be granted. Defendant does not object to the proposed amendments based on prejudice, but rather contends that plaintiff's claims are futile and would not survive a motion to dismiss. Plaintiff argues that defendant improperly applies the standard for dismissal rather than the standard for amending the pleadings. Although Plaintiff incorrectly disputes this court's authority to reject the proposed amendments as futile based upon the dismissal standard, Plaintiff does allege facts which facially preclude dismissal at this stage.[3] *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of claim which would entitle him to relief"). With respect to the wrongful termination claim, Defendant contends that Plaintiff's position as Vice President precludes coverage under the Wrongful Termination Statute. Plaintiff argues that dismissal is premature because the Court must first determine whether Plaintiff was a "bona fide employee" under the act. (Pl.'s Reply to Def.'s Opposition to Motion to Amend at 4). Defendant also argues that Plaintiff's emotional distress claims are not supported as a matter of law under the applicable case law in this jurisdiction. However, Plaintiff alleges that those claims are based upon Defendant's con-

---

**3.** Since the Third Circuit has held that claims which would not survive dismissal are properly deemed futile, it follows that the dismissal standard must be applied when testing the viability of a proposed amended claim. *See Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3rd Cir.1983).

duct during the termination process, which he asserts was "heavy handed and outrageous." *Id.* The Court will allow Plaintiff to amend the complaint to explore those claim on the merits. Likewise, the Court permits the plaintiff to amend the complaint to include a claim for misrepresentation. Defendant erroneously argues that Plaintiff's breach of contract claim precludes a claim for misrepresentation, however, as plaintiff correctly asserts, those claims may be argued in the alternative. *See* Fed.R.Civ.P. 8(e)(2). It is not necessary for the court to project the ultimate success of plaintiff's amended claims at this time. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The issue in deciding whether proposed amended claims are futile based on the dismissal standard is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.

### III. PLAINTIFF'S MOTION TO CITE ADDITIONAL AUTHORITY

Plaintiff moves to cite the recently decided Third Circuit opinion, *Alexander v. Anthony Intern.,* Civ. A. No. 02–3764, 2003 WL 21962955 (3rd Cir.2003), in support of his argument that he should not be required to arbitrate his claim as required by the employment contract because the cost of arbitration is prohibitive. Although this Court originally withheld its determination of Plaintiff's motion pending the outcome of a motion for reconsideration in *Alexander,* the Court now finds that *Alexander* is inapposite to the present case and the Third Circuit's decision in *Alexander* on reconsideration would not change the result.

In *Alexander,* the court refused to enforce the arbitration clause on the grounds that it was unconscionable as written, not, as Plaintiff argues in this matter, as en-

forced. Specifically, the court in *Alexander* found that the arbitration clause was procedurally unconscionable because it was presented to plaintiff "on a take-it-or-leave-it basis," and that plaintiff, a seventh-grade-educated laborer, had "no real choice but to accept [its] terms." *Id.* at 266. The court also rejected the substantive terms of the contract, finding that the thirty-day limit for filing a claim was "unnecessarily burdensome," and substantially limited the relief available to plaintiff, providing only for "net pecuniary damages." *Id.* Although the court in *Alexander* did note that plaintiff could not meet the financial burden of the projected costs of arbitration, as Plaintiff in this case argues, the court ultimately rested its unconscionability determination on the fact that defendants " presented [plaintiffs] with an agreement to arbitrate without providing an opportunity to negotiate its terms." *Id* at 268. In this case, Plaintiff, unlike the plaintiff in *Alexander,* is a college educated engineer, and was given the opportunity to negotiate the terms of his employment from the outset. Since *Alexander* adds nothing to the analysis of whether Bolinger can be compelled to arbitrate, the Court will deny Plaintiff's motion to cite additional authority.

### IV. CONCLUSION

For the reasons set forth above, the Court grants Defendant's motion to compel and Plaintiff's motion to amend the complaint. The Court denies Plaintiff's motion to cite additional authority.